# FIRST NATIONAL BANK OF UTAH, *Respondent, v.* M. KINNER, *Appellant.*

## See Ante, People *v.* Green, 11.

• PLEADING IN ACTION AGAINST A GUARANTOR.—Wherever the Statute of Frauds is recognized, it is not necessary that a complaint against a guarantor should set forth that the guaranty was in writing and signed, etc. (Brannan *v* Ford, 46 Cal., 7; Miles *v.* Thorne, 35 Cal., 335.)

THE COMMON LAW.—No specific body of the Common Law was transplanted to the Territory of Utah by the fact of emigration. Neither has the Common Law been extended over the Territory by the Treaty of Guadalupe Hidalgo, and but one course has been left open, to-wit: for the whole body of the people to agree expressly or tacitly upon a common measure. The people of Utah have tacitly agreed upon maxims and principles of the Common Law, suited to their condition, and consistent with the Constitution and Laws of the United States, and these only wait the recognition of the Courts to become the Common Law of the Territory. When so recognized, they are laws as

certainly as if expressly adopted by the law-making power.—Emerson, Justice.
(See ante People v. Green; also, Norris v. Harris, 15
Cal. 226; 2 Cal. 99; also, Godbe v. S. L. City, ante 68.)

Statute of Frauds.—The question as to whether any part of the Statute of Frauds in force in England, is in substance a part of the Territorial law, discussed by Emerson, Justice, but not decided by the Court.

When the Statute of Frauds Applies.—In the case at bar the promise of the Defendant was for the payment of a still subsisting debt of another, and comes within the terms of the Statute of Frauds; but if the effect of the contract of Defendant had been to discharge the original debt and he became the sole debtor, and there was no debt of another to which his promise was collateral, then the contract was not within the purpose and spirit of the statute. (Crooks v. Tully, 50 Cal.; 38 Cal. 135, 34 id. 673.)

Appeal from the Third District Court.

The facts are stated in the Opinion of the Court.

*Marshall & Royle* for Respondent.

*Robertson & McBride* for Appellant.

Emerson, J., delivered the Opinion of the Court.

This case comes up on an appeal on the part of the Defendant, from a judgment of the Third District Court overruling the demurrer to the complaint.

As shown by the Record, the case is substantially as follows: On the 20th of March, 1872, Nounnan & Gilmer made their joint promissory note, by which, for value received, they promised to pay to the order of A. Godbe, cashier of the Plaintiff corporation, $1,500, on the first day of September, A. D. 1872, with interest at two per cent. per month.

This note was delivered to and discounted by the Bank, and on the 7th of May following, and before maturity, was taken up by Nounnan, one of the makers. On the succeeding 7th of June, and when nearly three months of the current time of the note remained unspent, Nounnan reproduced it to the Bank, and at his request re-discounted it. When it became due and payable, according to its tenor, Nounnan applied to the Bank for an extension until the 1st day of January, A. D. 1873. The extension was agreed upon, but as a part of

this arrangement, the Defendant was to guaranty the payment of the note at the expiration of the time agreed upon. The complaint states, that the Defendant, with full knowledge of such agreement, "and for a valuable consideration to him moving, as well as in further consideration of the said extension of time, did guarantee the payment of said note," in the following terms: "For value received I hereby guarantee the payment of the within note."

The complaint sets up the carrying out of the agreement on the part of the Bank, and the failure of payment. The suit is on the guaranty.

Defendant demurs, and the only matter of consequence arising on the demurrer, is the validity of the guaranty.

Upon the face of the complaint the written undertaking does not specify the time when the payment was to be made, and does not explain the consideration.

If the case was on trial, and verbal evidence should be offered that the agreement was for payment on the 1st day of January, A. D. 1873, there would be some ground for the objection, that it was proposed to vary the legal effect of the writing by parol, since, as the note was past due, the written guaranty would import an agreement to pay in a reasonable time, and not on the first day of January, A. D. 1873.

There is a peculiarity about this proceeding that impressed me from the very outset, and which was not removed at the close of the elaborate argument of counsel.

Taking it for granted that the Defendant intended to go upon the idea that the doctrine applicable, where the Statute of Frauds prevails, should be administered, I am unable to see how he can raise the question supposed to be aimed at, by resorting to a demurrer to the complaint. Wherever the Statute of Frauds is recognized, or in force, so far as I know, the Plaintiff is not required to set forth that the guaranty was in writing and signed, etc. It is considered as a matter of evidence, and the want of it as matter of defence. If the Defend-

ant demurs, he thereby confesses that the agreement was in writing, and he precludes Plaintiff from giving legal evidence. (Gould's Plead., chap. 4, sec. 45; 2 Saunders' Plead. and Ev., 546; Campbell *v.* Wilcox, 10 Wall., 421.)

Waiving this consideration, how ought the case be viewed ?

The demurrer is understood as implying two general propositions. The first is that the essential portion of that branch of the Statute of Frauds which relates to guaranties, is in force in this Territory as common law. The second is, that by force of that law the Defendant's undertaking, as set forth, was not binding. The second proposition may be first considered. Supposing the principles of the statute to be law in this Territory, it is requisite to ascertain what they are, so far as they could be held to bear on this case. It may be assumed that the operation of the statute, admitting it to be recognized as Common Law, is to save any one from being charged upon a promise to answer for the debt, default or miscarriage of another, unless the agreement to so answer is in writing, signed by the guarantor or by his authority.

This statement is intended to recognize the statute as most stringently framed and expounded. In some of the States, Michigan among the number, the consideration is not required to be expressed in the writing. In England and in the State of New York, it must be in it.

According to the exposition of the statute in some States, where it is most rigidly applied, it has been held that if the object of the guaranty is a benefit to the guarantors which he did not before possess, a benefit accruing immediately to himself, and the basis for his undertaking is a consideration going directly to him, the case is not within the statute. This doctrine is stated with great precision by Chief Justice Savage in Farly *v.* Cleveland, 4 Cowen 432; and same case in error 9 Cow. 939. Referring to those cases, which he says do not fall within the statute, and are within the third class of cases, as this branch of the Statute of Frauds was di-

vided and classified by Chief Justice Kent in Leonard v. Vridenburg (8 John 29) he observes: "In all those cases founded on a new and original consideration of benefit to the Defendant or harm to the Plaintiff, moving to the party making the promise, either from the Plaintiff or original debtor, the subsisting liability of the original debtor is no objection to a recovery." In the case just referred to (same case in error, 9 Cow. 639) the Reporter's note expresses the doctrine of the decision in very clear and concise language. It is as follows: "Where a promise to pay the debt of a third person arises out of some new consideration of benefit to the promisor, or harm to the promisee, moving to the promisor either from the promisee or the original debtor, such promise is not within the Statute of Frauds, although the original debt still subsists and remains entirely unaffected by the new agreement." (See Mallory v. Gillet, 21 N. Y. 412: Furbush v. Goodnow, 98 Mass. 296; Nelson v. Boynton, 3 Met. 396, where the doctrine is much considered.

Inasmuch as upon a fair construction of this complaint, it must be held that it alleges a benefit to the Defendant, and a new consideration going to him, as a basis for his promise, I was at first inclined to the opinion that the doctrine as above stated applied to the case made by the complaint. But upon a more careful study of the cases referred to, with a more extensive comparison with other decided cases, I am satisfied that, admitting the Statute of Frauds to be in force, the case made by the complaint would come within it.

In all the above cases, the Plaintiff surrendered, and the Defendant received a bond or security, charged with the Plaintiff's debt, and all come within the class of Williams v. Leper, 3 Bush. 188, which is the starting point in all this class of cases, and Castling v. Aubert, 2 East. 325, which followed it, and upon the same ground with them, were no doubt properly held not to fall within the statute. I have found no case where the parol promise of one to pay the subsisting debt of another, has been sustained by the courts upon any other consideration,

than the receipt of some fund or security, either from the debtor or creditor, charged with the payment of the debt, so that in making the payment of the debt he was really fulfilling an obligation of his own.

It seems to me, that to carry the doctrine so far, as to apply it to the case made by the complaint, and to hold that it is not within the statute, would be virtually a repeal of the statute.    (Denman, C. J., in Green v. Cresswell, 10 Ad. & Ellis 453.)

In regard to the promise to pay money, which goes in discharge of the subsisting debt of another, the true test, whether within the statute or not, is, that it is made and accepted by the creditor as an original undertaking, and not merely subsidiary to that of another.    In the present case I regard the Defendant's promise as one for the payment of a pre-existing and still subsisting debt of another, and therefore within the terms of the statute.

If the effect of the promise or contract of the Defendant had been to discharge the original debt, and he became the sole debtor, and there was no doubt of another to which his promise was collateral, then the contract was not within the purpose and spirit of the statute, and it need not have been in writing.    The complaint, as before said, alleges the contract to have been in writing, and the demurrer admits it.    Even where the statute is most stringently applied, it is held that the words "value received" sufficiently explain the consideration going to the guarantor.    (Douglas v. Howland, 24 Wend. 35; Miller v. Cook, 23 N. Y. 495.

But however this may be, what opinion ought to be formed of the proposition, that this branch of the Statute of Frauds is in substance a part of the Territorial law?

In American Ins. Co. v. Canter, 1 Pet. 511, the Court, by Judge Marshall, say, substantially, that the laws of Florida, as they were when the Territory was ceded, so far as not inconsistent with the Constitution and Laws of the United States, continued in force until altered by the newly created power of the State.    (See, also, United States v. Powers, 11 How. 570; Strathers v. Lucas, 12

14

Pet. 410, 436. This appears to be the settled doctrine in regard to conquered and ceded Territory in the absence of special treaty stipulation. It applies to territory acquired from Mexico, since the treaty of Guadaloupe, made no special provision on the subject. Utah was embraced in that acquisition. As in Florida, the pre-existing law was Spanish. So in Utah, it was Mexican, and in both cases the laws were derived mainly from the laws of Rome. In neither did the English Common Law, or the Statute of Frauds, prevail. Congress made no special change, and the Territorial Legislature, upon whom authority was conferred, have made no express enactment upon the subject.

This Territory was first settled in 1847, and from that time up to the acquisition and treaty in 1848, the settlers were comparatively few in number. There were no settled laws, usages and customs among them. They came here as American citizens, under the flag, and claiming the protection of the United States Government.

The particular class of persons forming the great, if not entire bulk of emigrants, claim to have furnished troops from among their own numbers to assist this Government in its war against Mexico.

At the time of the acquisition and treaty, they could not claim Mexican citizenship, and have never adopted its laws and customs.

Soon after the change of sovereignty by the treaty, emigrants in large numbers flocked in from the States and surrounding Territories, and for many years there has been an organized community.

When we turn to the communities from whence these emigrants proceeded, we find that they differed one from another, more or less, in regard to their laws and institutions. No two are alike. In the most, it is true, many common law principles and doctrines were in force. Still the body of the common law in each was peculiar to the particular State, and it was rather the common law of the State than the English Common Law. In

some, the English statutes had been received as Common Law; in others, not.

These diversities make it impossible to assume that any specific body of the Common Law was transplanted to the Territory by the fact of immigration.

But one course was open, and that was for the whole body of the people to agree, expressly or tacitly, upon a common measure. It was to be expected that the emigrants would not be contented with the loose and alien institutions of an outlying Mexican department, and they have not been.

They have tacitly agreed upon maxims and principles of the Common Law suited to their conditions and consistent with the Constitution and Laws of the United States, and they only wait recognition by the courts to become the Common Law of the Territory. When so recognized, they are laws as certainly as if expressly adopted by the law-making power.

The judgment of the court below is affirmed, and a remittitur ordered to issue forthwith to the Third District Court, the Defendant to have ten days after notice served upon him, or his attorney, of the filing of the remittitur in that court, to answer the complaint.

BOREMAN, J., concurred in the conclusion reached.

McKEAN, C. J., delivered the following Opinion:

I concur in the conclusion that the judgment of the Court below must be affirmed. Upon the question, how far, or what parts of the Common Law of England should be recognized in this Territory, I reserve my opinion, to be written out and filed hereafter.