*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 39**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner*,

*v.*

CALVIN PAUL STEWART,
*Respondent*.

No. 20180847
Filed August 1, 2019

On Certiorari to the Utah Court of Appeals

Fourth District, Utah County
The Honorable Lynn W. Davis
No. 011403597

Attorneys:

Sean D. Reyes, Att'y Gen., Jeffrey D. Mann, Asst. Sol. Gen.,
Salt Lake City, Kelsy B. Young, Provo, for petitioner

Douglas J. Thompson, Margaret P. Lindsay, Provo, for respondent

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Calvin Stewart was charged with multiple counts of
securities fraud in 2001. He was unrepresented at trial and was
convicted on all counts. After sentencing, Stewart filed *pro se* a notice
of appeal and a docketing statement. But he failed to submit a brief
by the filing deadline. And the court of appeals dismissed his appeal
on that basis.

¶2 Twelve years later Stewart filed a motion to reinstate his
time to appeal under rule 4(f) of the Utah Rules of Appellate
Procedure. In filing this motion Stewart asserted that he was

deprived of his right to appeal when the sentencing court failed to inform him of his right to counsel on appeal in his sentencing hearing in 2003. The district court denied Stewart's motion. Stewart appealed. And the court of appeals reversed.

¶3 We now reverse the decision of the court of appeals. Criminal defendants seeking to reinstate the time to appeal under rule 4(f) bear the burden of proving that they were deprived of the right to appeal through no fault of their own. And Stewart has not satisfied this standard here. His appeal was dismissed because he failed to follow the briefing schedule provided by the court of appeals.

¶4 Stewart claims that he would have requested an attorney if he had been informed of his right to appellate counsel. And he asserts that his attorney would have preserved his appeal by filing a brief. Stewart thus contends that the sentencing court deprived him of his right to appeal. We disagree. The sentencing court may have failed to inform Stewart of his right to appellate counsel. And a colloquy about this right may have been a best practice at the time. But the court was under no legal obligation to inform Stewart of his right to appellate counsel. And because the court had no legal obligation to inform Stewart of his right to appellate counsel, it was not at fault for the dismissal of his direct appeal. The fault rests with Stewart. So relief under rule 4(f) is not warranted. We reverse the decision of the court of appeals on this basis.

I

¶5 In 2001 the State charged Stewart with multiple violations of securities laws. He was initially represented by private counsel. But that counsel withdrew before trial because Stewart could not afford to pay him. The court appointed Stewart a public defender. Stewart became dissatisfied with his attorney's performance and asked to represent himself. The trial court granted Stewart's request and allowed him to proceed *pro se*. It did so after "fully advis[ing]" Stewart of his right to counsel, informing him that he would "be held to the same standard" as if represented by counsel, and telling Stewart that if he "chang[ed] his mind and wishe[d] to have counsel represent him at trial he must" inform the court "by May 1st." Stewart did not change his mind. And at trial he was convicted on all counts.

¶6 Stewart filed *pro se* a notice of appeal and a docketing statement. But he failed to file a brief in accordance with the court of

appeals' briefing schedule. So the court of appeals dismissed his appeal.

¶7 Twelve years passed, during which time Stewart filed a variety of motions—each of which was dismissed. Then in 2015, Stewart filed *pro se* a motion to reinstate the time to file an appeal pursuant to rule 4(f) of the Utah Rules of Appellate Procedure. That rule states that "[i]f the trial court finds by a preponderance of the evidence that the defendant has demonstrated that the defendant was deprived of the right to appeal, it shall enter an order reinstating the time for appeal." UTAH R. APP. P. 4(f). Stewart also filed a motion to appoint counsel. The district court appointed a public defender to assist Stewart with his rule 4(f) motion and scheduled an evidentiary hearing.

¶8 At that hearing Stewart asserted that the sentencing court had not informed him of his right to counsel on appeal. And because he was not informed of that right, Stewart argued that he had been unconstitutionally deprived of his right to appeal. Stewart further testified that when the trial court informed him of the need to decide whether he wanted counsel by a specific, pretrial date, he believed that the court was saying that he would no longer have a right to an attorney on appeal.

¶9 The State argued that reinstatement of the time to appeal should be afforded only where a defendant is prevented from filing a timely notice of appeal. *See State v. Rees*, 2005 UT 69, ¶ 18, 125 P.3d 874. And Stewart filed a notice of appeal. So, according to the State, Stewart was not entitled to relief under rule 4(f). The State also challenged Stewart's memory about whether the sentencing court had informed him of his right to appellate counsel. On cross-examination Stewart admitted that his memory of what was said at sentencing was incomplete—"there's some things I remember, some things I don't." But he could recall without qualification that the sentencing judge failed to inform him of his right to counsel on appeal. Stewart claimed that there were certain things the judge said at sentencing that he wanted to remember and that he wrote these things down in a notebook. And nothing in his notebook indicated that the sentencing judge informed him of his right to counsel on appeal.

¶10 The district court denied Stewart's motion. It did so for three reasons. First, Stewart's "request[] to represent himself" and "his choice to proceed in his appeal *pro se*" constituted a "constructive waiver of his right to an attorney on appeal." Second, Stewart's motion failed on the merits because his own failure to respond to the

briefing deadline caused his appeal to be dismissed. And third, Stewart's self-serving testimony amounted to a "mere claim" and thus did not meet rule 4(f)'s preponderance standard. Stewart appealed the district court's decision.

¶11 The court of appeals reversed. It held that Stewart's right to appeal includes being informed of the right to counsel on appeal. *State v. Stewart*, 2018 UT App 151, ¶¶ 11–14, 436 P.3d 129. And because Stewart was not informed of his right to counsel on appeal, he was "prevented in some meaningful way from proceeding with [his] first appeal of right." *Id.* ¶¶ 11, 24 (citation omitted) (internal quotation marks omitted). The court of appeals further held that the district court erred when it found that "there was insufficient evidence that Stewart had not been deprived of the right to appeal." *Id.* ¶ 19. The court acknowledged that the district court's factual findings were entitled to deference, stating it "will 'not overturn them unless they are clearly erroneous.'" *Id.* ¶ 20 (quoting *State v. Kabor*, 2013 UT App 12, ¶ 8, 295 P.3d 193). But it then determined that the district court clearly erred. *Id.* ¶ 22. In the court of appeals' view, Stewart's "uncontroverted testimony" satisfied his burden of demonstrating by a preponderance of the evidence that he was not informed of the right to counsel on appeal and that he was thus unconstitutionally deprived of the right to appeal. *Id.* The court ordered the district court to reinstate the period for Stewart to file a direct appeal. *Id.* ¶ 24. The State then petitioned for a writ of certiorari, which we granted.

II

¶12 The State contends that the court of appeals erred in concluding that rule 4(f) permits reinstatement of the time to appeal on the basis of a sentencing court's failure to inform an unrepresented defendant of his right to counsel on appeal. The State also claims that the court of appeals erred when it reversed the district court's determination that Stewart failed to prove that he was not informed of his right to counsel on appeal. We agree with the State's first claim of error. And we reverse on that basis. Our holding, however, is limited to the facts of this case and the procedural rules that existed at the time of Stewart's sentencing. In 2003, the sentencing court had no legal obligation to inform Stewart of his right to appellate counsel.[1] It may have been a best practice for

---

[1] Sentencing courts' disclosure duties were expanded in 2018, when we amended rule 22 of the Utah Rules of Criminal Procedure

(continued . . .)

the court to do so. But nothing in our rules of procedure, our case law, or United States Supreme Court precedent mandated that such notice be provided. For this reason we cannot fault the sentencing court for this alleged shortcoming.

¶13 Relief under rule 4(f) is premised on a showing that the defendant was unconstitutionally deprived, through no fault of his own, of the right to appeal. *See Manning v. State*, 2005 UT 61, ¶ 31, 122 P.3d 628. This standard is not met here. Stewart's appeal was dismissed because he failed to follow the briefing schedule provided by the court of appeals. He accordingly is not entitled to reinstatement of the time to appeal.

¶14 We set forth the basis for this conclusion below. But we first consider two other grounds for reversal advanced by the State: (1) that our precedent forecloses rule 4(f) relief to a defendant who files a timely notice of appeal, and (2) that Stewart did not meet his burden of proving by a preponderance of the evidence that he was denied the right to appeal. We see some facial plausibility in the first ground but decline to resolve the case on that basis. We reject the second ground. But we reverse on the basis of the language of rule 4(f). We emphasize that this rule requires us to ask whether a criminal defendant was deprived of his right to appeal *through no fault of his own*. And we reverse on the ground that there was no "fault" on the part of the sentencing court or anyone else that caused the dismissal of Stewart's appeal; the appeal was dismissed because Stewart failed to file a timely brief.

A

¶15 Criminal defendants seeking reinstatement of the time to appeal must show that they were "deprived of the right to appeal." UTAH R. APP. P. 4(f). The State asserts that our precedent draws a clear line on the question of what it means to be "deprived" of this right. In the State's view, criminal defendants who are afforded an opportunity to file a notice of appeal have not been "deprived of the right to appeal." And because Stewart was allowed to file a notice of appeal, relief under rule 4(f) is not available here in the State's view.

¶16 The State's position is rooted in our precedent. The State views *Manning v. State*, 2005 UT 61, 122 P.3d 628, and *State v. Rees*, 2005 UT 69, 125 P.3d 874, as limiting the right of reinstatement of an

---

to include a requirement that a sentencing judge provide notice of the right to counsel on appeal. UTAH R. CRIM. P. 22(c)(1) (2018).

appeal to defendants who are prevented from filing a timely notice of appeal. While *Manning* does not draw so clear a line, *Rees* arguably does.

¶17 In *Manning* we were asked to decide what procedures a defendant must follow to restore a denied right to appeal. 2005 UT 61, ¶ 11. We held that "upon a defendant's motion, the trial or sentencing court may reinstate the time frame for filing a direct appeal where the defendant can prove, based on facts in the record or determined through additional evidentiary hearings, that he has been unconstitutionally deprived, through no fault of his own, of his right to appeal." *Id.* ¶ 31. We also identified some circumstances in which a defendant could make this showing.[2] Those examples, however, do not speak to the situation here—a case in which a defendant files a notice of appeal but fails to file a brief. Nor do they identify the point at which a defendant can be said to have been deprived of his constitutional "right to appeal."

¶18 *Rees*, however, appears to speak to this issue. There we explained that only those defendants who have "been prevented in some meaningful way from proceeding with [an] appeal[]" can secure reinstatement of the time to appeal. *Rees*, 2005 UT 69, ¶ 17 (second alteration in original) (citation omitted). And we construed "the act of 'proceeding' with an appeal to encompass filing a notice of appeal, not more." *Id.* ¶ 18. "Defendants who gain entry to appellate courts and have their appeals concluded either by a ruling on the merits or involuntary dismissal have exhausted their remedy of direct appeal and are thereby drawn into the ambit of the PCRA." *Id.*

¶19 This language from *Rees* may seem sufficient to resolve this case. It is undisputed, after all, that Stewart filed his notice of appeal. And we stated in *Rees* that defendants are deprived of the right to appeal only when they are prevented from "filing a notice of appeal." *Id.* Stewart availed himself of that right. So if the right to an

---

[2] *Manning v. State*, 2005 UT 61, ¶31, 122 P.3d 628 ("[T]he defendant asked his or her attorney to file an appeal but the attorney, after agreeing to file, failed to do so; . . . the defendant diligently but futilely attempted to appeal within the statutory time frame without fault on defendant's part; or . . . the court or the defendant's attorney failed to properly advise defendant of the right to appeal." (citations omitted)).

appeal encompasses only the right to file a notice of appeal, and nothing more, then Stewart cannot be said to have been deprived of this right.

¶20 We stop short of resolving this case on this basis, however. The fact-pattern presented in this case raises difficult problems that have not yet been addressed in our case law. Our *Rees* opinion speaks in broad terms—limiting the right to appeal only to the right to file a notice of appeal. But in *Rees* we were not asked to decide the question presented here. In *Rees* the defendant was represented by counsel and that counsel filed a brief on appeal. The problem in *Rees* was therefore quite different from the one we face here. The deficiency of the appeal in *Rees* was not in the outright failure to file a brief; it was in the failure to provide the court of appeals with a complete record. *Id.* ¶¶ 2–3. In that circumstance, it is entirely appropriate to conclude that the defendant was not deprived outright of his right to appeal. His appeal proceeded to a decision by the appellate court. And the defendant came out on the losing end due to a misstep of counsel in the briefing. This is an unfortunate outcome for the defendant. But *Rees* is not the sort of case where we would say that the defendant was deprived of a *right to an appeal*.

¶21 The case presented to us here is at least arguably different. Where no brief is ever filed on appeal it would be much harder to say that the defendant was not deprived of his right to an appeal. Consider a hypothetical in which a defendant is represented by counsel at all stages. If counsel assures his client that he will file an appeal and he files the notice of appeal but no brief, would we say that the defendant was not deprived of his right to an appeal because the notice of appeal was filed? The language of our *Rees* opinion suggests as much. But again, in *Rees* we were not confronted with this more difficult fact-pattern. It is at least conceivable that the right answer to this question is that *Rees* did not decide this question, and that its sweeping dicta should be curtailed. *See State v. Stewart*, 2018 UT App 151, ¶ 10 n.1, 436 P.3d 129 ("*Rees* did not contemplate a situation in which a defendant was denied the right to appeal by being denied the right to counsel.").

¶22 We promulgated appellate rule 4(f) in the wake of the *Manning* decision. And there may be an argument that the terms of our rule incorporate the standards set forth in the case law. *See GeoMetWatch Corp. v. Utah State Univ. Research Found.*, 2018 UT 50, ¶ 16, 428 P.3d 1064 ("[W]hen a word or phrase is transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." (alteration in original) (citation omitted)

(internal quotation marks omitted)); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 320–21 (2012) ("A statute that uses a common-law term, without defining it, adopts its common-law meaning."). Yet that still begs the key question. Rule 4(f) may incorporate the standards set forth in our case law. But our cases have never decided whether the dicta in *Rees* sweeps broadly enough to cover the fact-pattern at issue here.

¶23 We therefore decline to resolve this question here, as it is unclear whether *Rees* should be read to sweep as broadly as the State suggests, and there is an alternative ground for reversal (set forth in Part II.C below).

B

¶24 The State advances a second basis for a ruling in its favor. It asserts that Stewart failed to carry his burden of persuasion in the district court—his burden of establishing that the sentencing court failed to inform him of his right to appellate counsel at the underlying sentencing hearing. And it faults the court of appeals for its failure to attribute to the district court "implied" findings consistent with its decision, and for its alleged entry of its own "findings" on appeal.

¶25 The district court made few, if any, express factual findings in support of its determination that Stewart failed to carry his burden of proof. It made no finding as to whether Stewart's testimony was credible or reliable. And in the absence of such findings, the court of appeals concluded that Stewart had carried his burden of proof by presenting "uncontroverted testimony" as to what was disclosed in the underlying sentencing proceeding. *State v. Stewart*, 2018 UT App 151, ¶ 22, 436 P.3d 129.

¶26 The State challenges the court of appeals' approach on two grounds. First it asserts that the court of appeals should have assumed that the district court found Stewart's testimony to be lacking in credibility because such a finding is both consistent with the district court's decision and reasonable in light of the evidence in the record. And it contends that such a finding should have been afforded substantial deference on appeal. The State's second argument is advanced in the alternative. To the extent further findings were needed, the State insists that a remand was necessary. The State faults the court of appeals for, in the State's view, making its own findings instead of remanding for further findings in the district court.

¶27 The State's first argument finds plausible support in the language of some of our opinions. We have occasionally endorsed the propriety of a regime in which we "assume that the trier of facts found" facts "in accord" with its decision despite the absence of express "findings of fact." *Mower v. McCarthy*, 245 P.2d 224, 226 (Utah 1952); *see also State v. Ramirez*, 817 P.2d 774, 788 (Utah 1991) (quoting *Mower*, 245 P.2d at 226). Yet we have not always assumed the existence of facts not expressly stated on the face of a lower court order.[3] And we have never identified a universal standard for judging when we should infer the existence of findings not made on the record before us on appeal. This is an important question. And it is one we should address in an appropriate case. This is not that case, however, as we have no briefing from the parties on the standard that we should apply in deciding when to infer findings not expressly stated below, and a resolution of this question is not necessary to decide this case (in light of our decision to reverse on an alternative ground—see Part II.C below).

¶28 The State's alternative argument—that the court of appeals erroneously made its own factual findings—is misguided. The State is correct that our appellate courts are precluded from making independent findings of fact on appeal. *See Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979) ("[I]t is not the function of an appellate court to make findings of fact because it does not have the advantage of seeing and hearing the witnesses testify."). But that is not what happened here. The court of appeals merely determined that the

---

[3] Rightly. A universal rule to this effect would create bad incentives. It would discourage trial judges from including detail in their findings and conclusions. And that would rob us of the insight and analysis that we look to as the starting point for our decisions on appeal or certiorari. In light of these concerns, it might make sense for us to clarify our case law by establishing that we infer findings not explicitly entered below only in narrow circumstances, such as when the absent finding is *necessary* to the court's ultimate decision (and not just consistent with it). *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) ("When the trial court does not make explicit findings of fact, the appellate court infers the *necessary* factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings." (emphasis added)). We do not reach this question here, however, as it is unnecessary to our decision.

district court's findings were clearly erroneous. And that was the court of appeals' prerogative. *See State v. Martinez*, 2017 UT 43, ¶ 8, 424 P.3d 83 ("We disturb the district court's findings of fact only when they are clearly erroneous.").

¶29 The court of appeals conducted a thorough review of the evidentiary hearing at which Stewart testified in support of his rule 4(f) motion. During that hearing, Stewart testified that the sentencing court did not inform him of his right to appellate counsel. And he testified that when the trial court informed him of the need to either accept or reject the offer of court-appointed counsel by a specific date, he believed that the trial court was giving him an ultimatum that extended beyond trial and to his direct appeal. The court of appeals acknowledged that Stewart's testimony "was self-serving and not detailed." *Stewart*, 2018 UT App 151, ¶ 21. And it recognized that Stewart "did not have a 'full memory of everything' that was said to him from the bench." *Id.* Yet the court highlighted the fact that Stewart repeatedly emphasized without qualification that the sentencing court did not inform him of his right to appellate counsel. Such "uncontroverted testimony," in the court of appeals' view, "was evidence that [Stewart] was not informed of his right to appellate counsel." *Id.* ¶ 22. "Because the State offered no evidence to the contrary and because the [district] court did not find that the evidence presented was incredible or unreliable," the court of appeals concluded that the district court "clearly erred." *Id.*

¶30 The court of appeals did not make its own credibility determination. Nor did it make any other factual findings. The court thus acted within its prerogative in reviewing the district court's findings and ensuring that the district court properly applied the correct standard of proof. And we do not disagree with the court of appeals' conclusion.

C

¶31 The State advances a final basis for resolution of this case. It asserts that Stewart is at fault for the dismissal of his appeal, and contends that he cannot avail himself of rule 4(f) because he was not "deprived" of a right to appeal "through no fault of his own." We agree and reverse on this basis.

¶32 Rule 4(f) is premised on a causation analysis. Defendants seeking relief under rule 4(f) must demonstrate that they are not the cause of the loss of their right to appeal. They must point to some

other party—typically, counsel or the trial court—that is at fault for the deprivation of the right to appeal.[4]

¶33 Rule 4(f) premises reinstatement of the thirty-day period for filing a direct appeal "[u]pon a showing that a criminal defendant was *deprived* of the right to appeal." UTAH R. APP. P. 4(f) (emphasis added). The term "deprived" is crucial. That "word encompasses a narrow range of situations where a defendant would have appealed, but had that right 'take[n] away' or was '[kept] from the possession, enjoyment, or use' of that right." *State v. Collins*, 2014 UT 61, ¶ 31, 342 P.3d 789 (alterations in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 606 (2002)).[5] A defendant like Stewart who is the cause of his appeal being dismissed cannot claim that his right to appeal was "taken away" or "kept" from him.

¶34 The precedent from which the language of rule 4(f) was derived likewise contemplates a causation analysis. Rule 4(f) "was adopted to implement the holding and procedure outlined in *Manning v. State*." UTAH R. APP. P. 4 advisory committee note. And causation is a key cog in the *Manning* framework. In *Manning* we held that a "trial or sentencing court may reinstate the time frame for filing a direct appeal where the defendant can prove . . . that he has been unconstitutionally deprived, *through no fault of his own*, of his right to appeal." *Manning v. State*, 2005 UT 61, ¶ 31, 122 P.3d 628 (emphasis added). We then provided a few examples of what would constitute a deprivation of the right to appeal. These examples demonstrate the important role causation, or fault, plays in the analysis. In the first example, a "defendant ask[s] . . . her attorney to file an appeal but the attorney, after agreeing to file, fail[s] to do so." *Id.* In a second example, "the court or the defendant's attorney fail[s] to properly advise [the] defendant of the right to appeal." *Id.* Each of the defendants in these examples would be entitled to reinstatement

---

[4] In so holding we are not deciding that rule 4(f) relief will be foreclosed for any defendant who contributes in any way to the loss of an appeal (by failing, for example, to respond to a query from counsel on a matter of relevance to the appeal). Such a defendant may still be able to establish that the loss of the right to appeal was due to the fault of counsel. We need not and thus do not decide whether a defendant's "contributory negligence" would foreclose relief under rule 4(f).

[5] *See also Deprivation*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. An act of taking away . . . 2. A withholding of something . . . .").

of the time to file an appeal. That's because some party other than the defendant—an attorney or the court—is at fault for the defendant's failure to exercise her right to appeal.

¶35 *Manning* and the examples cited therein align with the language of rule 4(f). If a defendant is the cause of her appeal being dismissed, she cannot claim that she has been "deprived of the right to appeal." *See* UTAH R. APP. P. 4(f). That is exactly what happened here. After Stewart filed his notice of appeal and docketing statement, the court of appeals provided him a briefing schedule. Stewart, of his own volition, failed to follow that schedule—he never filed a brief. And his appeal was dismissed on that basis. Stewart cannot now claim that he was unconstitutionally deprived of his right to appeal through no fault of his own.

¶36 Stewart sees this issue differently. He asserts that an integral element of the right to appeal is the right to counsel on appeal. And he insists that he must be made aware of the right to counsel on appeal in order to exercise that right. Because the sentencing court failed to inform him of his right to appellate counsel, Stewart asserts that the sentencing court is to blame for the deprivation of the right to counsel on appeal—and accordingly is at fault for the denial of his right to appeal.

¶37 Stewart's proposition rests on the premise that constitutional rights are not properly preserved unless they are expressly highlighted in a colloquy in a judicial proceeding. Yet this is by no means a universal rule. And it runs contrary to the well-accepted maxim that "ignorance of the law is no excuse." *See In re Adoption of B.Y.*, 2015 UT 67, ¶ 19 n.3, 356 P.3d 1215 (citation omitted). This maxim is often invoked where a defendant claims ignorance of a statutory penalty. *See, e.g., Cheek v. United States*, 498 U.S. 192, 199 (1991). But it also has broader purchase. Any of a broad range of trial rights may be thought to be preserved despite the lack of an explicit announcement in court of the existence of such a right. Our rules of procedure require a colloquy or other disclosure as to some important constitutional rights. But other such rights remain intact despite the lack of an open announcement in court of their existence.

¶38 The United States Supreme Court has identified a few rights whose very existence implies a requirement of open announcement by the government. *See, e.g., Miranda v. Arizona*, 384 U.S. 436, 467–68 (1966) (requiring that persons in custody be informed of their privilege against self-incrimination); *Johnson v. Zerbst*, 304 U.S. 458, 467–68 (1938) (requiring that defendants knowingly waive their right

to trial counsel). For these limited rights, the failure to apprise a defendant of his rights forecloses the possibility of a determination of waiver or forfeiture. The right at issue is deemed to require an express disclosure of its existence. And the failure of disclosure means that a defendant cannot be charged with forfeiting the underlying right. Our opinions and rules of evidence have extended this principle a step or two further. *See, e.g.*, UTAH R. CRIM. P. 11(e)(3) (requiring trial courts to inform criminal defendants of their right against compulsory self-incrimination before accepting a guilty plea); *Manning*, 2005 UT 61, ¶ 31 (requiring that a defendant be informed of the right to appeal). But the above rights (and others we may be omitting) are exceptions that prove the rule. Unless and until the law expressly requires open announcement and express waiver, we presume an understanding of the existence of rights guaranteed by the constitution—and charge parties with the duty of asserting their rights, while imposing the consequence of forfeiture if they fail to do so at the time and in the manner required by our rules of procedure.

¶39 Our framework parallels that of the California Supreme Court in *People v. Barnum*, 64 P.3d 788 (Cal. 2003). The *Barnum* court reconsidered the viability of the "*Killpatrick-Kramer* rule." *Id.* at 793. That rule "require[d] a trial court to advise a self-represented defendant of the privilege against compelled self-incrimination before he or she is called by the People as a witness in their case-in-chief or testifies in his or her own defense." *Id.* In reassessing this rule, the court considered whether "the privilege against compelled self-incrimination, alone among the rights enjoyed by a self-represented defendant, mandates protection by the trial court" by an open disclosure of the existence of this right. *Id.* at 796. And it concluded that the right itself did not require this additional protection. *Id.* In so doing the court "recognize[d] that the privilege against compelled self-incrimination has been viewed as 'fundamental.'" *Id.* Yet it also noted that "other rights have been so ranked as well," citing the "right to compulsory process," the "right of confrontation," and the "right to testify." *Id.* In the *Barnum* court's view, "[n]o requirement has been imposed on the trial court to advise a self-represented defendant of any of these fundamental rights." *Id.* at 797. So it cannot be that the "fundamental" nature of the right mandates that notice of the right be provided. "[A] defendant who chooses to represent himself or herself after knowingly, intelligently, and voluntarily forgoing the assistance of counsel assumes the risk of his or her own ignorance, and cannot rely upon the trial court to make up for counsel's absence." *Id.*; *see*

*also State v. Winfield*, 2006 UT 4, ¶ 19, 128 P.3d 1171 ("[A] party who represents himself will be held to the same standard of knowledge and practice as any qualified member of the bar." (citation omitted) (internal quotation marks omitted)).

¶40 We see the matter similarly. To prevail in this case it is not enough for Stewart to assert that he has a right to appellate counsel—or even to insist that such right is important or in some sense fundamental. That begs the key question, as to whether this right (of all the important rights enshrined in the United States and Utah Constitutions) carries an additional requirement of open announcement or disclosure in court. Such a requirement is not inherent in the mere existence of a constitutional right. It must be established by rule or judicial opinion.

¶41 This framework dooms Stewart's case. At the time of Stewart's sentencing, no controlling precedent or rule had established a requirement of open announcement in court of the right to appellate counsel. Perhaps such an announcement would have been a "best practice." But there was no rule yet in place. We amended our rules in 2018 to require an announcement of the right to appellate counsel at sentencing. *See* UTAH R. CRIM. P. 22(c)(1) (2018). Yet the trial judge that sentenced Stewart can hardly be charged with the duty to follow a rule promulgated fifteen years later. With that in mind, we cannot fault the sentencing court for failing to inform Stewart of his right to counsel on appeal.

¶42 We do not hold courts at fault for failure to conform to best practices. We reverse on errors of law. And here there was no legal error. The judge that sentenced Stewart was under no legal obligation to inform him of his right to counsel on appeal. Because the sentencing court was under no such obligation, it was not at fault for the dismissal of Stewart's appeal. Relief under rule 4(f) is accordingly not warranted.

¶43 Stewart contests this conclusion. He notes that a few courts have determined that the United States Constitution requires courts to give criminal defendants express notice of the right to appellate counsel. *See, e.g.*, *United States v. Aloi*, 9 F.3d 438, 444 (6th Cir. 1993); *United States ex rel. Singleton v. Woods*, 440 F.2d 835, 836 (7th Cir. 1971); *United States ex rel. Smith v. McMann*, 417 F.2d 648, 654 (2d Cir. 1969); *Cochran v. State*, 315 S.E.2d 653, 654 (Ga. 1984); *State v. Allen*, 239 A.2d 675, 677 (N.J. Super. Ct. Law Div. 1968). Fair enough. But none of these precedents is controlling here. And we decline to

establish a new federal constitutional right on the briefing that is before us in this case.

¶44 Stewart's briefing on this question is limited and ultimately unavailing. He cites only one case from the United States Supreme Court in support of his position—*Halbert v. Michigan*, 545 U.S. 605 (2005). But Stewart misstates the holding in *Halbert*. *Halbert* does not establish that a defendant cannot waive the right to appellate counsel unless he is informed of that right, as Stewart suggests. The Court in *Halbert* was merely assessing the constitutionality of a Michigan statute that denied court-appointed appellate counsel to indigents convicted by plea. *Id.* at 610. The *Halbert* Court struck down that statute. But *Halbert* does not endorse the right Stewart asks us to acknowledge. And we are in no position to establish a new federal, constitutional right on the briefing that is before us in this case.

¶45 Stewart's briefing fails to engage with the relevant provisions of the United States Constitution. He provides no analysis of the text or original meaning of the Due Process and Equal Protection Clauses, which have been cited as the source of the right to appellate counsel. *See id.* at 610–11. And he never connects the dots in a manner that explains why this right (among many other fundamental rights of criminal procedure) should carry a requirement of open announcement in court. At most Stewart is asserting that the right to appellate counsel is an important constitutional right. But that is true for many other constitutional rights afforded within the criminal process. And without any careful briefing on the matter, we lack a principled basis for establishing that there was a constitutional duty for the judge who sentenced Stewart in 2003 to inform him in open court of his right to appellate counsel.

¶46 Stewart's briefing under the Utah Constitution is likewise deficient. As with the federal constitutional question, Stewart has not engaged with the text or original meaning of the governing provisions of the Utah Constitution, or identified a basis for deeming the right to counsel on appeal as one of those limited rights that also conveys a requirement of open disclosure in court as a prerequisite to its forfeiture.

¶47 This is fatal to Stewart's case. We are in no position to establish a new constitutional right of the sort proposed by Stewart under the briefing that is before us. *See Zimmerman v. Univ. of Utah*, 2018 UT 1, ¶ 19, 417 P.3d 78 (citing the failure of originalist analysis as one of several grounds for declining to establish a new state constitutional right). Nor are we in a position to conclude that the

sentencing judge had a duty to announce the existence of a right to appellate counsel under governing statutes or rules of procedure. Such a duty has come into existence in the years after the sentencing proceeding at issue in this case. *See* UTAH CODE § 78B-22-201(1)(c) (requiring sentencing courts to advise criminal defendants who are convicted of "a criminal offense the penalty for which includes the possibility of incarceration" that they have a right to counsel on appeal); UTAH R. CRIM. P. 22(c)(1) (requiring sentencing courts to advise defendants of "the right to retain counsel [on appeal] or have counsel appointed by the court if indigent"). But neither the cited rule nor the governing statute was in place in 2003. And again, we cannot fault the sentencing judge for a failure to follow laws that were not adopted until years after he imposed the sentence in question.

¶48  We reverse on this basis. We conclude that Stewart has failed to carry his burden of persuading us to establish a new constitutional right. *See State v. Fuller*, 2014 UT 29, ¶ 50, 332 P.3d 937 (requiring defendants asserting constitutional claims to provide more than just "bald citations to authority [without] development of that authority and reasoned analysis based on that authority" (alteration in original) (citation omitted) (internal quotation marks omitted)). In so holding we do not foreclose the possibility that a future litigant may establish the existence of this constitutional right. We simply hold that Stewart has failed to carry his burden of persuasion in his briefing in this case. And in the absence of a sufficient basis for establishing this new right we conclude that there was no "fault" on the part of the sentencing judge that resulted in the denial of Stewart's right to appeal. The fault rests with Stewart—in failing to file a brief under the briefing schedule established by the court of appeals. And Stewart is accordingly not entitled to relief under rule 4(f).

———————