*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2020 UT 35**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

UTAH DEPARTMENT OF TRANSPORTATION,
*Appellant and Cross-Appellee,*
*v.*
BOGGESS-DRAPER COMPANY, LLC
*Appellee and Cross-Appellant.*

No. 20180262
Heard January 15, 2020
Filed June 11, 2020

On Direct Appeal

Third District, Salt Lake
The Honorable Barry G. Lawrence
No. 090921179

Attorneys:

Sean D. Reyes, Att'y Gen., James L. Warlaumont, Barbara H.
Ochoa, Asst. Att'y Gens., Salt Lake City, for appellant and
cross-appellee

Robert E. Mansfield, Megan E. Garrett, Salt Lake City, for appellee
and cross-appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1   This is an eminent domain action involving a parcel of
property owned by the Boggess-Draper Company, LLC (Boggess).
In 2009 a portion of that parcel, situated along the I-15 corridor,
was taken by the Utah Department of Transportation (UDOT) in
connection with a project at 11400 South in Draper. In the
litigation that followed, the parties disagreed on the quantum of
damages for the condemned property and on the amount of
severance damages to Boggess's remaining property. As the

litigation proceeded, Boggess eventually sold the remaining property, which was developed into two car dealerships. Evidence of this subsequent development was excluded by the district court on a pretrial motion *in limine* on the ground that it was categorically irrelevant to the property's value in 2009. Citing Utah Code sections 78B-6-511 and -512, the district court held that the Boggess property had to be valued as of the date of the taking, and based only on what a willing buyer and seller would have known at that time. It thus endorsed a "general rule that a party may not rely on post-valuation facts and circumstances to prove severance damages."

¶2 We reverse. We reinforce the settled proposition that damages for a taking are to be assessed as of the date of the taking. And we uphold the general principle that the measure of damages in a case like this one is market value—what a willing buyer and a willing seller would consider in a voluntary transaction. But we hold that there is no categorical rule foreclosing the relevance of evidence of a subsequent transaction involving the property in question. And we reverse and remand for a new trial in accordance with the relevance standard we describe in greater detail below.

¶3 We also reject Boggess's position on cross-appeal—its assertion of a right to an attorney fee award as a constitutionally required element of its "just compensation" under article I, section 22 of the Utah Constitution. Boggess presents no originalist basis for its assertion of a constitutional right to attorney fees, and no adequate basis for overcoming our decision to the contrary in *Board of County Commissioners v. Ferrebee*, 844 P.2d 308 (Utah 1992). We accordingly conclude that it has failed to carry its burden of persuasion on this point.

I

¶4 This is an eminent domain action filed by UDOT in 2009. The case involves a portion of a parcel of property owned by Boggess and taken by UDOT in connection with its widening and reconstruction of 11400 South in Draper. Boggess sought compensation for the value of the taken property and severance damages for harm to its remaining property.

¶5 The case did not go to trial until 2018. By that point Boggess's remaining property had been sold and developed into two car dealerships—in a sale that took place in 2016.

¶6 Before trial Boggess filed a motion *in limine* asking the district court to exclude evidence of the 2016 sale, price, and subsequent development of its remaining property. The district court granted Boggess's motion. It noted that the date of valuation of Boggess's remaining property was December 17, 2009—the date the eminent domain action was filed. *See* UTAH CODE § 78B-6-512(1) (stating that "the right to compensation and damages shall be considered to have accrued at the date of the service of summons"). And it concluded that evidence of a later transaction involving the property was "not relevant to determin[ing] the value of the property in 2009."

¶7 The district court cited Utah Code section 78B-6-512 for the propositions "that only values for the date of valuation are relevant" to the damages inquiry and "that other later-occurring facts that might affect valuation should not be considered in determining valuation." And it reasoned that allowing the jury to hear the later sales price could leave the jury "with the impression that the plaintiff has been fully compensated." For these reasons, the district court held that all evidence had to be presented through the lens of what a willing buyer and seller would have known, or could have predicted, as of the valuation date. And it granted Boggess's motion on this basis, while qualifying that if Boggess opened the door and made post-valuation-date facts relevant, UDOT would have the right to respond at trial.

¶8 In the course of the trial both parties put on experts to opine on the value of the taken property and on the severance damage to the remaining property. At various points Boggess's counsel and experts made statements relating to the remaining property's development potential and value[1]—comments that prompted claims by UDOT that Boggess had opened the door to post-valuation-date facts under the district court's order. But each time the district court declined to allow UDOT to bring in evidence of the 2016 sale, reasoning that any probative value

_____

[1] Boggess's experts stated, for example, that the property's "highest and best use" had been "degraded" due to reduced access and increased commuter traffic from the project; testified that an aerial photograph of the property pre-dating its development showed the area "just all what it looks now"; and asserted that Boggess "basically had to sell the property for less than what it was before."

would be substantially outweighed by undue prejudice under Utah Rule of Evidence 403.

¶9 At the close of trial the court issued an instruction telling the jury to disregard "any reference in the evidence to the property's value at some later point in time or any reference to any subsequent sale or development of the property." The instruction also warned that "[f]ailing to do so might produce a verdict which is not based on the evidence in this case." Under this and other instructions, the jury entered a verdict awarding Boggess over $1.7 million—an amount encompassing its determinations of the fair market value of the taken property and severance damages to the remaining property.

¶10 Boggess later filed a motion requesting an award of its costs, expenses, and attorney fees incurred in the proceedings—based on article I, section 22 of the Utah Constitution. The district court denied the motion, citing *Board of County Commissioners v. Ferrebee* for the proposition that "just compensation" under article I, section 22 of the Utah Constitution refers to damages for the value of taken property and does not encompass a right to recover costs and attorney fees. 844 P.2d 308, 313–14 (Utah 1992).

¶11 UDOT filed this appeal, asserting that the district court abused its discretion in refusing to admit evidence of the 2016 sale and subsequent development of the property. Boggess filed a cross-appeal, contending that the district court erred in denying its motion for an award of costs and attorney fees under the Takings Clause of the Utah Constitution.

II

¶12 Three questions are presented for decision: (a) whether the district court erred in granting Boggess's motion *in limine* on the basis of a blanket rule barring "post-valuation facts and circumstances to prove severance damages"; (b) whether it erred in rejecting UDOT's assertion that Boggess opened the door to the admission of post-valuation-date evidence through the assertions of its counsel and experts at trial; and (c) whether it erred in denying Boggess's motion for an award of costs and attorney fees. We reverse on the first point, decline to reach the second, and affirm on the last.

A

¶13 Prior to trial the district court granted the Boggess motion *in limine* on the basis of a categorical rule prohibiting evidence of any sale or development of property after the date of its taking.

And it rooted this rule in both the governing provisions of the Utah Code and controlling case law.

¶14 The district court found in Utah Code section 78B-6-512 a "law and policy that only values for the date of valuation are relevant." It thus deemed the statute to establish a rule that "later-occurring facts that might affect valuation should not be considered in determining valuation." The district court also invoked case law in support of its rule. It cited *Redevelopment Agency v. Mitsui Investment Inc.* for the "general rule" that "ordinarily evidence of subsequent occurrences is not admissible." 522 P.2d 1370, 1372 (Utah 1974).

¶15 We view the matter differently. We agree, of course, that the date of valuation is the time of the taking. But we find nothing in the code or in our case law to support the categorical rule endorsed by the district court. So we reverse its decision granting the motion *in limine* filed by Boggess.[2]

¶16 In the paragraphs below we first set forth the basis for our conclusion that the district court's categorical rule is contrary to the terms of the Utah Code, as informed by our rules of evidence. Then we establish that our case law is consistent with this view. And we close with the conclusion that the decision granting the Boggess motion *in limine* was a prejudicial one entitling UDOT to a new trial.[3]

_____

[2] In so holding we reject Boggess's assertion that UDOT failed to preserve its position on this point. UDOT opposed the motion *in limine* on the ground that evidence of the 2016 sale and its price was relevant to establishing the remaining property's highest and best use and to undermining the Boggess experts' assertions about physical attributes of the property. And that opposition was sufficient to preserve the position advanced by UDOT on this appeal.

[3] *See State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) (An erroneous decision to admit or exclude evidence "cannot result in reversible error unless the error is harmful."); *see also State v. Powell*, 2007 UT 9, ¶ 21, 154 P.3d 788 (An error is harmful if "our confidence in the verdict is undermined" by it. (Citation omitted)).

1

¶17 The governing statutes provide for just compensation for property taken or damaged based on market value at "the date of the service of summons." UTAH CODE § 78B-6-512(1). They also state that a jury "may consider everything a willing buyer and a willing seller would consider in determining the market value of the property." *Id.* § 78B-6-511(2)(a).

¶18 The code thus establishes the date for measuring the market value of taken property. *See id.* § 78B-6-512(1) (stating that the "value" of property at the date of the summons "shall be the measure of compensation"). But it does not speak to the categories of relevant evidence that may be considered in assessing that value as of that date.[4] Evidentiary relevance is not a statutory matter. It is a question governed by our rules of evidence.

¶19 Our rules set a low bar for relevance. Evidence is relevant if it has "*any* tendency to make a fact" "of consequence in determining the action" "more or less probable than it would be without the evidence." UTAH R. EVID. 401 (emphasis added). And evidence of a sale or other development after the date of valuation may at least sometimes speak to the market value of the property on an earlier date.

¶20 A post-valuation-date sale or development of property may be relevant to the extent it aids the factfinder in checking assumptions about the development potential of the property in question—assumptions made in assessing the value of the property on the valuation date. As a leading treatise puts it, evidence of subsequent development may not be *direct* evidence of property value on an earlier date, but it may still be "useful" in "confirm[ing]" or undermining "the expectations, as of the date of taking[,] of a willing buyer." 4A NICHOLS ON EMINENT DOMAIN

---

[4] As Boggess points out, Utah Code sections 78B-6-512(2) and -512(3) do speak to the relevance of *certain kinds* of post-valuation-date evidence. *See* UTAH CODE § 78B-6-512(2) (mitigation by the condemnor "after the date of the service of the summons" may be considered); *id.* § 78B-6-512(3) (improvements by the property owner "subsequent to the date of service of summons may not be included in the assessment of compensation or damages"). But neither of these sections speak to a *general rule* about the relevance of post-valuation-date evidence.

§ 14A.04[2][b]. Post-valuation-date evidence, in other words, may establish real-world "[e]xperience" that can "correct [an] uncertain prophecy" that assesses value without the benefit of such after-acquired evidence. *Id.*

¶21 Evidence of market value on the date of the taking is often based on predictions about subsequent events, including the development potential of the property in question. And where one party is permitted to put on valuation evidence rooted in *expectations* of development potential, it makes little sense to conclude that the other party's evidence of *actual* property development is categorically irrelevant.[5] Where the property is developed post-taking, that may inform a factfinder's assessment of development potential, and undermine expressed concerns about a lack of access to the property or other barriers to development.

¶22 The district court itself effectively conceded this point when it acknowledged that "if the parties looked at comparable sales later in 2010, when the property retained essentially the same character as in December 2009, those facts might be relevant to establish the valuation in 2009." To push the point a step further, surely a sale of property the day after the taking would be highly probative of the property's value on the valuation date. And that further undermines the notion of a categorical bar on the admissibility of post-valuation-date evidence.

¶23 We are not suggesting that a post-valuation-date sale or development of taken property yields *conclusive* evidence of

_____

[5] *See, e.g., Georgia-Pacific Corp. v. United States*, 640 F.2d 328, 337 n.5 (Ct. Cl. 1980) (using evidence of the sale of remainder property five years after the valuation date to corroborate and test expert opinions regarding the expectations of a prospective purchaser and seller as of the valuation date for future logging efforts); *United States v. Brooklyn Union Gas Co.*, 168 F.2d 391, 397 (2d Cir. 1948) (admitting post-valuation-date evidence for its bearing on the prospective value at the time of taking; noting that "evidence of such actual [development] is useful to support or check the assumed prospects," and concluding that "it would seem an eerie conclusion that a [jury] must resort to guess, closing its eyes to reality, when its decision must actually be formulated after the true facts have become available").

market value on the date of the taking.[6] Nor are we holding that post-valuation-date developments are *necessarily admissible in evidence*. Our holding is limited. We are simply concluding that a post-valuation-date sale or other development is *potentially relevant evidence*, and not subject to a categorical bar under the code.

¶24 The statutory measure of compensation is market value on the date of the taking—based on reasonable expectations *at that time*. Post-valuation-date developments may potentially qualify as relevant under our rules of evidence. But such developments may not be conclusive, as where market conditions have changed markedly from those expected at the time of the taking. And such developments may not even be admissible in evidence, as where the trial court decides that the risk of unfair prejudice substantially outweighs any probative value. *See* UTAH R. EVID. 403.

¶25 Neither of these concerns is sufficient to sustain a blanket rule establishing the categorical irrelevance of post-valuation-date developments, however. Concerns about unexpected changes in market conditions can be raised and tested in the crucible of the adversary system—through dueling experts and otherwise.[7] And trial courts retain substantial discretion under rule 403 and otherwise to make case-by-case determinations of admissibility.

2

¶26 Our case law is consistent with the above conclusions. We have broadly held that the fair market value assessment considers "all factors . . . that any prudent purchaser would take into account," "*including any potential development*" that could "reasonably . . .be expected." *Weber Basin Water Conservancy Dist. v. Ward*, 347 P.2d 862, 863 (Utah 1959) (repudiated on other grounds in *Redev. Agency v. Grutter*, 734 P.2d 434 (Utah 1986)) (emphasis added). And if potential development is relevant, then actual development may have at least some tendency to inform

---

[6] *See infra* ¶ 27.

[7] *See id.* (noting that "change of condition[s] and the general increase of prices of land and the variation in value of money are all subject to explanation" at trial by expert witnesses and counsel).

the reasonableness of any predictions about potential development.

¶27 In *Weber Basin*, we explained that transactions removed in time from the valuation date may be probative of the market value on that date. 347 P.2d at 864. Our *Weber Basin* opinion considered a sales price from six and a half years before the valuation date[8] because it was "not so remote as to eliminate the probative value of the price as some evidence to consider in placing a fair value upon [the] land." *Id.* We conceded that "[t]he more remote the time" of the sale "the less probative value it may have." *Id.* But we held that that goes "to the weight of the evidence *and not its competency or its relevance.*" *Id.* (emphasis added). We also noted that it is "universally recognized that sales of the same property at any reasonable time in the past [or future] is relevant evidence on the issue of present value." *Id.* And we pointed out that "[s]uch sales, when made under normal and fair conditions, *are necessarily a better test of the market value than speculative opinions of witnesses*; for, truly, here is where 'money talks'" *Id.* (emphasis added) (citation omitted).

¶28 The district court claimed to find a contrary principle in *Redevelopment Agency v. Mitsui Investment Inc.*, 522 P.2d 1370, 1372 (Utah 1974). [9] It cited that case for the "general rule" that "ordinarily evidence of subsequent occurrences is not admissible." But *Mitsui* is a case about Utah Code section 512(3),[10]

_____

[8] In *Weber Basin* the disputed evidence was the property owner's own purchase of the condemned land six and a half years *before* the valuation date. But the logic of the *Weber Basin* opinion extends equally to purchase of condemned land by another party *after* the valuation date, as in this case.

[9] The district court also relied on *City of Hildale v. Cooke*, 2001 UT 56, ¶ 21, 28 P.3d 697. But *Hilldale* merely restates the general rule in Utah Code section 78B-6-512(1)—that "the appropriate measure of damages is not simply the market value of the land condemned but the market value at the time it was condemned." *Id.* And that rule is consistent with our holding for reasons explained above.

[10] This is the current citation for the statute discussed in *Mitsui* and *Cooke, supra* ¶ 28, n.9, which has been renumbered since those cases were decided.

a provision that deals with improvements by a property owner "subsequent to the date of service of summons," and states expressly that such improvements "may not be included in the assessment of compensation or damages." Any "general rule" stated in *Mitsui* thus goes only to compensation for improvements made "subsequent to the date of service of summons," and not to the effect of post-valuation-date evidence generally.

¶29 Boggess cites *Utah Department of Transportation v. Jones*, 694 P.2d 1031 (Utah 1984), in support of the district court's order. But *Jones* is not on point. In that case we upheld a district court's decision to admit post-valuation-date evidence *under a different statute* — what is now Utah Code section 78B-6-511(1)(b), which allows evidence of damages caused by "the construction of [an] improvement . . . proposed by the [condemnor]" related to the taking of an owner's property. Our holding in *Jones* must be understood in this context. When we upheld the district court's decision to admit proposed testimony of post-valuation-date damage to property stemming from the condemnor's project on the taken property, we were not holding that this evidence was admissible under an exception to a "general rule" that evidence of post-valuation-date events is ordinarily inadmissible. We were simply applying a different statute.

¶30 For all these reasons we conclude that there is *no* "general rule that a party may not rely on post-valuation-date facts and circumstances to prove severance damages." And we thus find error in the district court's ruling on Boggess's motion *in limine*.

3

¶31 This leaves the question whether the district court's error was harmful — whether "our confidence in the verdict is undermined" by it. *State v. Powell*, 2007 UT 9, ¶ 21, 154 P.3d 788. We conclude that UDOT was in fact harmed by the district court's error in categorically excluding evidence of the 2016 sale and subsequent development of the remaining property. And we find that the error is accordingly reversible. *See State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) (An erroneous decision to admit or exclude evidence "cannot result in reversible error unless the error is harmful.").

¶32 The district court's decision to exclude evidence of the 2016 sale and subsequent property development substantially affected UDOT's strategy and presentation at trial. Boggess's claim for severance damages was premised on the idea that UDOT's taking diminished access to the remaining property and

increased commuter traffic, undermining its potential for future development. Its experts went so far as to say that as a result of the taking access to the property was "basically unusable" because it was "too steep to drive down" without a "four-wheel drive truck" and that increased traffic made the property "a place where it's much, much, more difficult to . . . travel in and out of."

¶33 The ruling on the motion *in limine* hamstrung UDOT in its attempt to rebut this evidence. So we have no trouble concluding that our confidence in the verdict is undermined by the district court's decision.

¶34 In so stating we are not prejudging the admissibility of any or all elements of the 2016 sale and development of the Boggess property.[11] That question will be up to the district court at a new trial on remand. *See Weber Basin*, 347 P.2d at 864 (noting the possibility of exclusion of evidence of a sale that "is too remote in point of time" where "changed conditions have intervened so that the [district] court thinks the evidence has *no* probative value" (emphasis added)); UTAH R. EVID. 403 (evidence may be excluded where its probative value is "substantially outweighed" by a danger of "unfair prejudice, confusing the issues," or "misleading the jury"). We simply hold that the decision granting the Boggess motion *in limine* was reversible error because there is no categorical rule barring post-valuation-date evidence in a condemnation proceeding like this one.

B

¶35 Despite its decision granting the Boggess motion *in limine*, the district court held open the possibility that Boggess might open the door to the admissibility of post-valuation-date evidence during the course of trial. And at various points during trial the Boggess counsel and experts made reference to the effects of the UDOT condemnation on access to the remainder of the Boggess property, and on its potential for future development. For example, Boggess's experts testified, as noted above, that the property's "highest and best use" had been "degraded" by reduced access and increased traffic; that a pre-development

_____

[11] We express no opinion, for example, on the question whether the ultimate sales price in 2016 is admissible on a rationale consistent with this opinion, or whether it should be excluded on the basis of a rule 403 balance.

photo showed the property "just all what it looks now"; and that Boggess "had to sell the property for less than what it was before."

¶36 At these and other similar points UDOT asserted that Boggess had opened the door to evidence of the 2016 sale and development of the Boggess property. The district court disagreed. It rejected UDOT's various attempts to introduce the 2016 evidence, concluding that any probative value of the evidence was substantially outweighed by the fact that it would be "unbelievably prejudicial" under Utah Rule of Evidence 403.

¶37 UDOT challenges these decisions on this appeal. It asks us to reverse the several decisions made at trial on the admissibility of the 2016 sale and development of the Boggess property. But we see no basis for wading into the weeds of these decisions. We have reversed and remanded for a new trial. And in so doing we have undermined a central premise of the district court's rule 403 balancing—the side of the equation dealing with probative value.

¶38 At retrial on remand, the district court may be called upon to make a new set of judgments about the probative and prejudicial effects of any proffered evidence of the 2016 sale and development of the Boggess land. But those judgments will turn on the facts and circumstances of the trial as it unfolds on remand. And they will be informed by the standard set forth in this opinion. Nothing more that we could say here will be of any particular use on retrial. So we leave the matter there.

C

¶39 After trial the district court denied Boggess's motion for costs and attorney fees. Boggess rooted its motion in the takings clause of the Utah Constitution. Citing article I, section 22, Boggess asserted that the guarantee of "just compensation" encompasses a right not just to damages measured by the market value of taken property but also to costs and fees incurred in seeking such damages. The district court denied this motion under the authority of *Board of County Commissioners v. Ferrebee*, 844 P.2d 308, 313–14 (Utah 1992), which held that the constitutional right of just compensation is limited to recovery for takings of and damages to property and does not extend to the costs of litigation.

¶40 Boggess challenges the denial of its motion on cross-appeal. It asserts that it has a constitutional right to recover

its costs and fees in addition to its damages for the market value of its property. And it accordingly urges us to overrule our decision in the *Ferrebee* case.

¶41 UDOT resists this argument on its merits. And it also asks us to affirm on an alternative basis—the existence of a written stipulation signed by Boggess, in which Boggess allegedly agreed to pay its own costs and fees incurred in this action.

¶42 We may have authority to affirm on alternative grounds. *See Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225. But we have no obligation to do so. And we decline to do so here, where UDOT failed to cite the stipulation in the district court, and thus deprived us of a record basis for endorsing the proposition that Boggess's right to recover costs and fees is clearly foreclosed by that document.[12]

¶43 Instead we affirm on the merits. The district court's decision was correct under our decision in *Ferrebee*, which held that "just compensation" under article I, section 22 of the Utah Constitution guarantees recovery for takings of and damages to property, but does not sweep more broadly to cover "costs incurred in defending a condemnation action." *Ferrebee*, 844 P.2d at 313–14.[13] And we find no basis for overruling that decision.

¶44 Our case law identifies a range of factors that we consider in deciding whether to overrule one of our precedents. *See Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553. But the threshold consideration under our doctrine of *stare decisis* is "the persuasiveness of the authority and the reasoning on which the precedent was originally based." *Id.* ¶ 22. If we have no basis for questioning the "reasoning on which the precedent was originally based," *id.*, we have no need to consider other factors of relevance to our *stare decisis* inquiry.

_____

[12] *See Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225 (noting that an alternative basis for affirmance must be "apparent from the record"); *Francis v. State*, 2010 UT 62, ¶ 21, 248 P.3d 44 (noting that we "*may* affirm a decision of the district court on alternate grounds" but emphasizing that "it falls to the party seeking the benefit of the rule to explain why it is eligible to have the alternative arguments considered").

[13] *Ferrebee* dealt with appraisal fees, but its rationale applies equally to other litigation costs and fees.

¶45 Here, the threshold consideration is dispositive—we see no basis for questioning our decision in *Ferrebee*. Boggess's challenge to this decision centers on policy concerns—not the originalist analysis required under our Utah case law.[14] Boggess asserts that a party who is denied recovery for litigation costs and attorney fees is not ultimately receiving the fair market value of its taken property because such costs and fees are effectively an uncompensated transaction cost of a forced sale. This might be persuasive if we were interpreting "just compensation" in light of contemporary economics. But that is not the question presented. The question presented concerns the original, historical understanding of "just compensation." And Boggess has not shown that "just compensation" historically was understood to extend beyond compensation for the value of property to encompass indirect costs incurred by the property owner.[15] Our own originalist research, moreover, has identified material that is, if anything, consistent with *Ferrebee*.[16]

---

[14] *See, e.g., State v. Lujan*, 2020 UT 5, ¶ 26, 459 P.3d 992 (explaining that "the Utah Constitution is to be interpreted in accordance with the original public meaning of its terms at the time of its ratification"); *Salt Lake City Corp. v. Haik*, 2020 UT 29, ¶ 12, --- P.3d --- (emphasizing that "we seek to ascertain and give power to the meaning of the text as it was understood by the people who validly enacted it as constitutional law" (quoting *Richards v. Cox*, 2019 UT 57, ¶ 13, 450 P.3d 1074) (internal quotation marks omitted)).

[15] *See State v. Stewart*, 2019 UT 39, ¶¶ 47–48, 449 P.3d 59 (stating that a "failure" to present an "originalist analysis" of the Utah Constitution is a "ground[] for declining to establish a new state constitutional right" (citing *Zimmerman v. Univ. of Utah*, 2018 UT 1, ¶ 19, 417 P.3d 78)).

[16] *See, e.g., Kimball v. City of Grantsville City*, 57 P. 1, 3 (Utah 1899) (explaining that "[u]nder the power of eminent domain the owner may be compelled to surrender his . . . property . . . without *any other compensation than the fair market value thereof*; and such compensation, *and only such*, he is entitled to by virtue of . . . the constitution") (emphases added); *see also* 1 OFFICIAL REPORT OF THE PROCEEDINGS AND DEBATES OF THE CONVENTION 326–335, 623 (1898) (discussing the Utah takings clause at length, but focusing

(continued . . .)

¶46 The *Ferrebee* court endorsed the "logic" embraced by the U.S. Supreme Court in interpreting the Takings Clause of the United States Constitution.[17] *See Ferrebee*, 844 P.2d at 313–14. That logic, set forth in *United States v. Bodcaw Co.*, 440 U.S. 202 (1979), is that the historical understanding of "just compensation" contemplates "compensation . . . *for* the property, and not *to* the owner," and that litigation costs are "indirect costs to the property owner" that are "not part of" the "just compensation" for taken property required under the United States Constitution. *Id.* at 203 (quoting *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 326 (1893) (emphasis added)). The *Bodcaw* opinion acknowledged that it might be "fair or efficient to compensate a landowner for all the costs he incurs as a result of a condemnation action." *Id.* at 204. But it held that compensation for such costs "is a matter of legislative grace rather than constitutional command." *Id.*

¶47 This was the basis for the *Ferrebee* court's construction of the Utah just compensation clause. And we see no originalist basis for concluding that this was error. So we affirm the denial of Boggess's motion for fees and costs.

¶48 Boggess's policy concerns may be grounds for it to seek a legislative amendment to the Utah Code to establish a broader

---

(continued . . .)

exclusively on the value of property taken or damaged with no mention of costs spent litigating the taking).

[17] Boggess emphasizes that our Utah conception of "just compensation" could differ from its federal counterpart. But that does not affirmatively establish that the Utah takings clause actually encompasses all that Boggess hopes it does. *See Lujan*, 2020 UT 5, ¶ 49 n.7 (explaining that we may "depart from the federal formulation *if and when* we are presented with state constitutional analysis rooted in the original meaning of the Utah [Constitution]" (emphasis added)); *Alpine Homes, Inc. v. City of West Jordan*, 2017 UT 45, ¶ 17, 424 P.3d 95 (declining to "conduct an independent analysis of the Utah takings clause" where the parties "do not undertake an independent analysis of the language of the Utah provision, cite authority interpreting it, or otherwise present an independent rationale for a takings violation as a matter of state law").

right to costs and fees in takings cases.[18] But they are not enough to persuade us to set aside our decision in *Ferrebee*.

### III

¶49 There is no categorical rule deeming post-valuation-date evidence irrelevant to the determination of fair market value under Utah Code sections 78B-6-511 and -512. Nor is there a constitutional right to an award of litigation costs and attorney fees as an element of just compensation. We reverse and remand for a new trial with these principles in mind.

––––––––––––––

[18] Our code already recognizes a right to a fee award in some circumstances. *See* Utah Code § 78B-6-509(7)(a) (allowing an award of litigation expenses to the property owner where the ultimate award of just compensation is *greater* than the amount offered in settlement by the property owner); *id.* § 78B-6-509(8)(a) (allowing an award of litigation expenses to the condemnor where the ultimate award of just compensation is *less* than the amount offered in settlement by the property owner).