**2023 UT 9**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

UTAH STREAM ACCESS COALITION,
*Appellant,*

*v.*

VR ACQUISITIONS, LLC, and STATE OF UTAH,
*Appellees.*

No. 20210748
Heard: January 9, 2023
Filed May 18, 2023

On Direct Appeal

Fourth District, Heber
The Honorable Derek P. Pullan
No. 100500558

Attorneys[1]:

Shawn T. Welch, Michelle Quist, Craig C. Coburn, Salt Lake City, for appellant

Nathan D. Thomas, Elizabeth M. Butler, Salt Lake City, for appellee VR Acquisitions, LLC

Andrew Dymek, Asst. Solic. Gen., David N. Wolf, Asst. Att'y Gen., Sean D. Reyes, Att'y Gen., Salt Lake City, for appellee State of Utah

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which JUSTICE PETERSEN, JUSTICE HAGEN, JUSTICE POHLMAN, and JUDGE ORME joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE PEARCE did not participate herein; COURT OF APPEALS JUDGE GREGORY K. ORME sat.

---

[1] Attorneys for *amicus curiae* Utah Alliance to Protect Property Rights: Michael D. Zimmerman, Erin Bergeson Hull, Salt Lake City.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1 This appeal boils down to a single issue: whether there was a 19th-century basis for an easement providing the public with the right to touch privately owned streambeds underlying state waters.

¶2 In *Conatser v. Johnson*,[2] we recognized such an easement but did so under modern common-law trust principles.[3] Shortly after our decision in that case, the legislature enacted the Public Waters Access Act (PWAA),[4] which purported to override our holding.[5]

¶3 Utah Stream Access Coalition (USAC)—a nonprofit corporation seeking to preserve recreational access to Utah rivers and streams—filed a complaint against VR Acquisitions after USAC members were cited for trespass for wading in the Provo River on VR Acquisitions' property. USAC claimed that the PWAA violated articles XVII and XX of the Utah Constitution as well as federal common law. The State intervened in the proceedings.

¶4 The district court entered summary judgment against USAC on its article XVII and federal common law claims, leaving only the article XX claim. After a bench trial, the court determined that the PWAA violated article XX of the Utah Constitution, and VR Acquisitions and the State appealed. In that appeal (*USAC I*), we determined that the district court made a threshold error in reaching its article XX determination because its analysis relied on modern common law rather than constitutional principles.[6] So we remanded the case, requesting that the district court address the "crucial threshold question"[7] (threshold question) of whether the easement we identified in *Conatser* (*Conatser* easement) "has a historical basis

---

[2] 2008 UT 48, 194 P.3d 897.

[3] *See id.* ¶¶ 20–28 (citing 25 Am. Jur.2d *Easements and Licenses in Real Property* § 1 (2007) & § 81 (2004)).

[4] *See* UTAH CODE §§ 73-29-101 to -208.

[5] *See id.* § 73-29-103(6).

[6] *Utah Stream Access Coal. v. VR Acquisitions, LLC* (*USAC I*), 2019 UT 7, ¶ 6, 439 P.3d 593.

[7] *Id.* ¶ 29.

as a public easement as of the time of the framing of the Utah Constitution."[8] We further explained that because USAC rooted its article XX claim to access the Provo River in the notion that the *Conatser* easement is a public land that was "acquired . . . [and] accepted" by the State (and therefore subject to the public trust doctrine), "USAC [is] in no position to assert that the State 'acquired' or 'accepted' any such easement at the time of the ratification of the Utah Constitution"[9] unless USAC can show that there was a historical legal basis for a *Conatser* easement in the late 19th century. Accordingly, we instructed the district court to resolve the remaining constitutional questions only if it resolved the threshold question in USAC's favor.[10]

¶5 On remand, at USAC's request, the parties conducted additional discovery. VR Acquisitions and the State then filed motions for summary judgment asserting that, based on the established facts, USAC could not establish a 19th-century basis for a *Conatser* easement. The district court granted the motions for summary judgment, and USAC appealed.

¶6 USAC presents three overarching arguments in this appeal. First, it exhorts us to reverse the district court decision because material facts are in dispute. Second, it requests we reverse the district court's determination concerning the threshold question. Third, it offers policy considerations that, in its view, justify reversal of the district court's summary judgment determination.

¶7 We hold that the district court's decision was not reliant on the facts USAC claims are disputed. And because USAC has not identified an affirmative, 19th-century legal basis for a *Conatser* easement, we hold that the district court correctly ruled that USAC did not make the threshold showing. USAC's policy arguments do not affect these holdings.

## Background

¶8 Our analysis relies on relevant caselaw, the PWAA, and the prior proceedings in this case. We begin by summarizing these sources.

---

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 91 (citing UTAH CONST. art. XX, § 1).

[10] *See id.* ¶¶ 91–92.

## I. Relevant Caselaw

¶9 In two opinions, we have discussed the public's right to use waters within the state. In *J.J.N.P. Co. v. State*,[11] we recognized an "easement over the water"[12] giving the public the "right to float leisure craft, hunt, fish, and participate in any lawful activity when utilizing" a lawfully accessible body of water.[13] We held that this right exists "[i]rrespective of the ownership of the bed and navigability of the water."[14]

¶10 In *Conatser v. Johnson*,[15] we clarified the scope of the public's easement over public water, holding that, so long as the public's use does not cause injury to the landowner, the easement encompasses "the right to touch privately owned beds of state waters"[16] because "touching the water's bed is reasonably necessary and convenient for the effective enjoyment of the public's easement."[17]

## II. The PWAA

¶11 After our decision in *Conatser*, the legislature enacted the PWAA,[18] declaring "its intent to foster restoration of the accommodation existing between recreational users and private property owners" as it had been "before the decision in *Conatser v. Johnson*."[19] Under the PWAA, the public may (1) "float on public water" that is sufficiently wide and deep for floating; (2) "incidentally touch private property as required for safe passage and continued movement" while floating; (3) "portage around a

---

[11] 655 P.2d 1133 (Utah 1982).

[12] *Id.* at 1136.

[13] *Id.* at 1137.

[14] *Id.*

[15] 2008 UT 48, 194 P.3d 897.

[16] *Id.* ¶ 19.

[17] *Id.* ¶ 23.

[18] UTAH CODE §§ 73-29-101 to -208.

[19] *Id.* § 73-29-103(6).

dangerous obstruction in the water" while floating; and (4) "fish while floating."[20]

¶12 But the PWAA otherwise limits public recreational access to water flowing over streambeds that are privately owned. For example, the law provides that the public may not utilize a private streambed for hunting,[21] wading, or other activities.[22] Those who violate the PWAA may be subject to civil liability and penalties for trespass.[23]

### III. USAC's Lawsuit

¶13 The Provo River intersects Victory Ranch, which VR Acquisitions owns. Until the enactment of the PWAA, the public used the stretch of river that crosses Victory Ranch for recreational activities like boating and fishing.

¶14 But since the enactment of the PWAA, VR Acquisitions has prohibited public access to the stretch of river flowing over Victory Ranch, including by preventing USAC members from accessing this section of the Provo River for recreational purposes. USAC members have also been warned and cited by the Utah Division of Wildlife Resources and the Wasatch County Sheriff for trespass while accessing the Provo River.

¶15 Based on its members' restricted access to the Provo River, USAC initiated a lawsuit against VR Acquisitions, claiming that the PWAA violates article XVII, section 1 and article XX, section 1 of the Utah Constitution, as well as federal common law. The State intervened in the proceedings.

### IV. The District Court's Initial Decision

¶16 Each of the parties moved for summary judgment. The district court granted summary judgment against USAC on its article XVII and federal common law claims.[24] After additional briefing on

---

[20] *See id.* § 73-29-202(1)–(2).

[21] The law does include an exception for "waterfowl hunting." *See id.* § 73-29-102(9)(a)(iii).

[22] *See id.* § 73-29-102(9)(b).

[23] *See id.* § 73-29-205(1)–(2).

[24] As we noted in *USAC I*, USAC did not challenge the district court's summary judgment decisions under article XVII or federal

(continued . . .)

USAC's remaining claim under article XX, the district court conducted a five-day bench trial. It determined that the *Conatser* easement is an interest in land of the state under article XX, section 1. And it went on to conclude that because the PWAA "substantially impaired the public's interest in the lands and waters" of the state, it was unconstitutional under article XX, section 1. VR Acquisitions and the State appealed that judgment.

### V. The First Appeal: *USAC I*

¶17 In *USAC I*, we discussed several "important questions"[25] raised by the parties, including whether, under article XX, section 1, (1) the *Conatser* easement constitutes "lands of the State";[26] (2) the *Conatser* easement was "acquired" and "accepted" by the State;[27] (3) the PWAA "disposed of" public land;[28] and (4) the PWAA violates the mandate that the lands of the state be "held in trust for the people."[29]

¶18 But we stopped short of resolving these important constitutional questions, determining that the district court made a "threshold error" in relying on *J.J.N.P.* and *Conatser* because "[i]n those cases we were not asked to analyze the historical scope of a public easement in use of public waters at the time of the framing of the Utah Constitution."[30]

¶19 We reversed the district court's judgment and remanded, instructing the court to address whether the *Conatser* easement was "in line with the sort of public access right that our law would have

---

common law, so those decisions remain unchallenged. *See Utah Stream Access Coal. v. VR Acquisitions, LLC* (*USAC I*), 2019 UT 7, ¶ 19 n.1, 439 P.3d 593.

[25] *Utah Stream Access Coal. v. VR Acquisitions, LLC* (*USAC I*), 2019 UT 7, ¶ 59, 439 P.3d 593.

[26] *See id.* ¶¶ 61–65.

[27] *See id.* ¶¶ 79–89.

[28] *See id.* ¶¶ 66–69.

[29] *See id.* ¶¶ 73–78.

[30] *Id.* ¶ 86.

dictated at the time of the framing of the Utah Constitution."[31] We explained that "it may be possible for USAC to demonstrate on remand that there is a basis in historical fact—in the understanding of public easements in the late 19th century—for the easement we recognized in *Conatser*."[32] And we noted that this "crucial threshold question . . . could moot the other issues presented in the case."[33]

¶20 So we asked the district court to resolve this threshold question.[34] We also invited the court to reconsider the premises of its prior decision in the event it determined that USAC had established a historical basis for its claimed easement.[35]

## VI. The District Court's Proceedings on Remand

¶21 Given the language of our opinion in *USAC I*, the importance of the issues, and the "inevitability of a second appeal," on remand, the district court reopened discovery. It determined that the threshold question presented a mixed question of historical fact and law because both "historical facts including customary uses of public waterways in the late 19th-century" and "historical evidence of public easement law" were relevant to its resolution.

¶22 The district court advised the parties that the case would be conducted in two phases. First, the court would address the threshold question and, if it resolved the question in USAC's favor, then it would decide whether the *Conatser* easement was a land of the state that was acquired and accepted under article XX, section 1. Second, if the court decided those issues in USAC's favor, then it would decide whether the PWAA violated article XX, section 1—either by disposing of the *Conatser* easement for a purpose other than that for which it was acquired or by violating the public trust doctrine.

¶23 After additional discovery, VR Acquisitions and the State moved for summary judgment. VR Acquisitions asserted that even if USAC's facts were accepted as true, USAC had not shown that 19th-

---

[31] *Id.* ¶ 88.

[32] *Id.* ¶ 5.

[33] *Id.* ¶ 29.

[34] *See id.* ¶ 90.

[35] *See id.* ¶ 92.

century law recognized the existence of a *Conatser* easement. In support of its motion, VR Acquisitions cited an 1891 Supreme Court of the Territory of Utah case, *Harkness v. Woodmansee*,[36] for the proposition that, at that time, a public right-of-way over private property could be established in only three ways: by condemnation, dedication, or prescription. According to VR Acquisitions, USAC took the position that a 19th-century *Conatser* easement was established in "custom and practice," rather than in any of the three ways identified by the *Harkness* court. And VR Acquisitions cited 19th-century caselaw indicating that the doctrine of easement by custom was disfavored in Utah and elsewhere across the country.

¶24 Like VR Acquisitions, the State cited *Harkness* as standing for the proposition that a *Conatser* easement could not have existed under early Utah caselaw. It also claimed that when Utah was a United States territory, a *Conatser* easement could not have arisen without congressional authorization because Congress had "plenary power" over the land within the territory. So, according to the State, any customary use of streambeds at that time would not have been understood to constitute an easement—a vested legal right—rather, the use would have been understood to constitute, at most, an implied license. The State further elaborated that beginning in 1869, when the United States began transferring title to land to private purchasers via patent, title was typically passed free of any encumbrance or adverse claim; thus, a *Conatser* easement could not have passed to private landowners during that period. Finally, the State cited sources indicating that although Congress authorized rights-of-way on public lands in the Utah Territory and elsewhere, including on navigable streams, it did not grant a right-of-way on non-navigable streams.

¶25 USAC responded to the summary judgment motions by first identifying what it claimed were disputes of material fact that precluded the district court from granting summary judgment. It next argued that territorial and state law "recognized, regulated[,] and enforced" the *Conatser* easement. In its view, the *Conatser* easement has existed in Utah since the pioneers' arrival—as evidenced by the fact that in the late 19th century, Utahns recreated in rivers and streams in the state without restriction, including by taking part in activities like "fishing, swimming, wading, baptisms,

---

[36] 26 P. 291 (Utah 1891).

floating, [and] fur trapping." Based on the evidence it identified during discovery, USAC concluded that the *Conatser* easement was "in a sense arguably dedicated by Utahns themselves, specifically the [Church of Jesus Christ of Latter-day Saints] and its members who settled Utah."

¶26 USAC also disputed the applicability of the *Harkness* framework outlined by VR Acquisitions and the State. It sought to distinguish *Harkness* based on the fact that it "dealt with a finite public right-of-way across a specific parcel of . . . private property," rather than "a territory- and now state-wide public easement." USAC next pointed to early Utah trespass statutes, which, according to USAC, did not prohibit individuals from crossing private property for any purpose, including to access a stream, unless the trespass also caused damage to the property.

¶27 Finally, USAC countered the State's contentions concerning the federal government's ownership of the land within the Utah Territory and its conferral of land titles to private parties. USAC explained that "despite the delays and complexities associated with the lands of the United States . . . nothing changed"; "Utahns . . . and Utah law recognized the existence of the *Conatser* easement[,] and Utahns freely and ubiquitously exercised their easement rights, crossing private and public uplands to access streams and walking the public or private banks and beds of those streams when fishing, etc."

¶28 In response to USAC's arguments, VR Acquisitions and the State maintained that (1) there were no material facts in dispute; (2) based on the "longstanding separation between Church and State," a 19th-century *Conatser* easement cannot be based on religious doctrine; and (3) notwithstanding USAC's evidence regarding early trespass statutes, 19th-century caselaw established landowners' right to exclude, which imposed liability on those who trespassed on private land.

### A. USAC's Undisputed Facts

¶29 Using the findings and testimony of three expert witnesses, USAC presented the following facts before the district court. First, based on the historical record and relevant facts of their customs and practices, Utahns in the 19th century understood and believed that they had a right to the free use of the streambeds of Utah's rivers and streams, even where the adjoining lands were privately owned. Second, there is little to no evidence rebutting the fact that Utahns exercised this perceived right in a way requiring them to touch the

riverbeds even where they did not have permission from the landowner. Third, even though Utah settlers could not obtain legal title to their lands until the federal government established a land office in 1869, Utah's territorial legislature, without federal approval, granted county courts and officials jurisdiction over the management of water, as well as the distribution, occupation, and sale of land. Fourth, following the opening of the federal land office in Utah in 1869, persons holding "title" issued under territorial law secured federal land patents and legal titles to their lands. Fifth, whether before or after the opening of the land office and issuance of federal land patents, early Utahns' continuing access to and use of streambeds on private lands were free and ubiquitous, and this use was reflected in and allowed by trespass laws. Sixth, territorial laws passed in 1852, 1866, 1876, and 1888 all required physical damage to property (e.g., cutting of fences or trampling of crops) or theft or conversion of property (e.g., allowing one's cattle to graze in another's field or cutting someone else's timber) for a civil trespass to occur. Seventh, territorial trespass laws did not prohibit Utahns from walking across another's land or from fishing and walking on the banks and beds of streams owned by private landowners. Eighth, beginning in the 1880s, Utah taxpayers funded an annual stocking of fish in the rivers and streams without regard for whether the waters passed through public or private property. Ninth, news articles reported that the upper Provo River (along with other Utah rivers and streams) was a popular destination for local anglers before 1896, even on land that had been granted to private individuals by federal patent by 1895; and only one out of hundreds of articles mentioned issues regarding trespass or landowner permission. Tenth, Utahns' streambed use continued after statehood and into the early 20th century as more land along streams became private and more citizens flocked to those streams to fish. Eleventh, state trespass laws did not prohibit the free use of streams flowing through private land: in 1915, the Utah legislature clarified that trespass laws did not "prohibit a person from wading up or down any stream while fishing." And twelfth, when questioned, state officials staunchly defended the right of the public to wade in streams flowing through private lands.

¶30 The district court accepted these facts as true and concluded that (1) until the mid-20th century, "Utahns freely, ubiquitously and, with few exceptions, without landowner objection or legal repercussion, touched and utilized the beds of . . . waters" in Utah's rivers, streams, and lakes when accessing waters within the state

"for any lawful purpose"; and (2) "the nature and scope of this historical public use of Utah's rivers, streams, and lakes was co-extensive with the easement recognized by the Utah Supreme Court in *Conatser*."

¶31 But having accepted as true all facts USAC asserted and drawing all reasonable inferences in USAC's favor, the district court nevertheless determined USAC had not shown that the historical use of streambeds established a *Conatser* easement in the late 19th century. The court concluded, relying upon *Harkness*, that in the 19th century, a public right-of-way could "be established only by condemnation, dedication, or prescription." Accordingly, the court rejected USAC's assertion that a *Conatser* easement was established based on the customs and practices of 19th-century Utahns.[37] Further, the court agreed with VR Acquisitions and the State that the absence of trespass laws in the 19th century did not convey an easement to the public.

¶32 The district court also examined two stages of Utah history, relying on a historical analysis written by Ralph W. Johnson and Russell A. Austin, Jr. (Johnson Article), which VR Acquisitions included with its motion for summary judgment. For the period from 1851 to 1869, the court concluded that the public's use of non-navigable streambeds could not have established an easement because at that time, Congress had plenary power over the lands comprising the Utah Territory. For the period from 1869 to statehood in 1896, the court concluded that transfer of title to private owners passed free of any encumbrance or adverse claim and that the land retained by the United States government during this period was not encumbered by a *Conatser* easement.[38]

*B. Evidentiary Objections and Disputes Before the District Court*

¶33 In opposition to the motions for summary judgment, USAC disputed one of VR Acquisitions' alleged facts—that "[t]he ability to

---

[37] The district court declined to reach VR Acquisitions' and the State's constitutional arguments concerning the separation of church and state because it determined that USAC's claims could be resolved on other grounds.

[38] The district court also rejected an argument made by USAC at oral argument that the *Conatser* easement arose out of the public's ownership of state waters.

walk down a streambed underlying non-navigable waters was subject to debate around the time of statehood and has been the subject of litigation since." USAC argued that the sources VR Acquisitions cited in support of this assertion were either inapplicable or unreliable. USAC also disputed the evidence VR Acquisitions provided in an expert report (Rogers Report) by Dr. Jedediah Rogers. USAC argued that the Rogers Report contained impermissible legal conclusions (as opposed to factual support) and ignored relevant 19th-century statutes.

¶34 In reply, the State objected to USAC's expert rebuttal reports, which USAC introduced in response to the VR Acquisitions' Rogers Report. The State asserted that because it did not enter the Rogers Report (or any affidavit from Dr. Rogers) into the summary judgment record, USAC had no reason to include expert rebuttal reports in opposition. The State also objected to portions of USAC's statement of facts because they lacked citations to the initial expert reports. And finally, the State objected to portions of USAC's experts' declarations, arguing they were irrelevant, violated the best evidence rule, and made unsupported legal conclusions.

### VII. The District Court's Grant of Summary Judgment

¶35 The district court ruled that there were no genuine disputes of material fact and that USAC had not satisfied the threshold showing that there is a "historical basis as a public easement at the time of the framing of the Utah Constitution." The district court consequently granted VR Acquisitions' and the State's motions for summary judgment. It did not reach the question of whether the *Conatser* easement constituted a land of the state that was acquired and accepted under article XX, section 1 of the Utah Constitution. It likewise did not reach the other constitutional questions presented in the case.

¶36 USAC appealed. We exercise jurisdiction under Utah Code section 78A-3-102(3)(j).

### Standard of Review

¶37 Summary judgment is properly granted "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."[39] We

---

[39] UTAH R. CIV. P. 56(a).

review a district court's "legal conclusions and ultimate grant or denial of summary judgment for correctness, and view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[40]

## Analysis

¶38 USAC asks us to reverse the district court's grant of summary judgment, advancing three main arguments. First, it asserts the district court erred in finding no material facts in dispute because (1) the parties disagreed about the evidence presented during discovery; (2) the district court improperly weighed disputed material facts; (3) USAC's evidence repudiated the State's claim that, in order for the *Conatser* easement to be valid, it had to be recognized by the federal government when it transferred lands via patents; and (4) 19th-century law is not confined by federal and territorial caselaw.

¶39 Second, USAC maintains that the district court erred in answering the threshold question in favor of VR Acquisitions and the State. For support, USAC points to 20th-century caselaw, the customs and practices of Utahns in the late 19th century, early trespass statutes, and federal law.

¶40 Finally, USAC urges us to overturn the district court's ruling based on policy considerations. These policy considerations include the state constitutional right to fish, the caselaw and statutes of other western states, and the economic impacts it claims will result from the district court's decision.

¶41 VR Acquisitions and the State counter that the district court got it right when it determined that, even accepting all historical facts presented by USAC as true and drawing all reasonable inferences in its favor, USAC identified no legal basis on which a 19th-century *Conatser* easement could have been recognized. They also urge us to disregard USAC's policy arguments.

¶42 We affirm the district court's grant of summary judgment. We hold that the district court's decision did not rely on disputed material facts and that USAC has not established a 19th-century basis for a *Conatser* easement. And we conclude that the policy arguments USAC advances are unavailing.

---

[40] *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (cleaned up).

## I. The District Court Did Not Rely on Any Disputed Material Facts

¶43 In seeking reversal of the district court's grant of summary judgment in favor of VR Acquisitions and the State, USAC argues that the court erred when it found there were no material facts in dispute. It asserts that not only did it dispute VR Acquisitions' and the State's material facts, but that VR Acquisitions and the State also disputed USAC's material facts. USAC further asserts that the district court considered and improperly weighed these disputed material facts, so the grant of summary judgment was inappropriate. VR Acquisitions and the State respond that there was no genuine dispute of material fact, so the district court's order should be affirmed.

¶44 Under rule 56 of the Utah Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."[41] A genuine factual dispute exists only when resolution of the factual question might result in a verdict in favor of the non-movant.[42] A disputed fact is "material" if it is essential to resolving the claim under relevant law.[43] So, by inference, immaterial disputed facts—those that have no bearing on the court's decision or are irrelevant to the question before the court—will not preclude summary judgment.

¶45 USAC argues that it presented material facts and evidence supporting the conclusion that a *Conatser* easement "was recognized

---

[41] UTAH R. CIV. P. 56(a).

[42] *See Cochegrus v. Herriman City*, 2020 UT 14, ¶ 14, 462 P.3d 357 ("We apply an objective standard to determine whether a genuine factual dispute exists, which asks whether reasonable jurors, properly instructed, would be able to come to only one conclusion, or if they might come to different conclusions, thereby making summary judgment inappropriate." (cleaned up)).

[43] *See In re Guardianship of A.T.I.G.*, 2012 UT 88, ¶ 35, 293 P.3d 276 ("[A] fact is material only if it is significant or essential to the issue or matter at hand." (cleaned up)); *see also Alliant Techsystems, Inc. v. Salt Lake Bd. of Equalization*, 2012 UT 4, ¶ 31, 270 P.3d 441 ("A disputed fact is material if it affects the rights or liabilities of the parties." (cleaned up)).

by Utah territorial and state laws" during statehood and for the first 100 years after the pioneers settled in Utah. It also contends that its factual allegations and expert witness declarations "were sufficient to create a genuine dispute of material fact relating to whether a *Conatser*-type easement would have been accepted under the law of the late 19th century."[44] According to USAC, its evidence created more than a dozen issues that encompassed disputed material facts, all of which related to the creation and use of the *Conatser* easement by early Utahns. USAC further asserts that it disputed some of VR Acquisitions' and the State's material facts and that VR Acquisitions and the State objected to some of USAC's material facts.

¶46 In addition, USAC argues that despite the district court's purported acceptance of USAC's historical facts, the court adopted factual evidence presented by VR Acquisitions that contradicted those facts—specifically the Johnson Article. USAC also contends that, inconsistent with USAC's accepted historical facts, the district court improperly concluded that the *Conatser* easement could not have existed in late-19th-century Utah in light of *Harkness v. Woodmansee*.[45] And finally, USAC contends that, also inconsistent with USAC's accepted facts, the district court improperly concluded that the law of the late 19th century was confined to federal and territorial caselaw.

¶47 VR Acquisitions argues that the district court genuinely accepted as true all the facts USAC had set forth, viewing them in the light most favorable to USAC and drawing all reasonable inferences in its favor, but because the threshold question was a mixed question of fact and law and USAC did not identify any legal basis upon which a *Conatser* easement could have been created, USAC's arguments cannot survive summary judgment. In other words, VR Acquisitions contends that while it is true that USAC presented historical facts that might suggest early Utahns accessed private land to use public waters, USAC has not identified any basis that *legally* allowed them to do so—thus, no easement was created. Further, VR Acquisitions asserts that at statehood, there was a clear legal standard for establishing that an easement existed, as outlined by *Harkness*, but USAC's facts were insufficient to meet that standard. Finally, VR Acquisitions contends that there are no

---

[44] (Cleaned up.)

[45] 26 P. 291 (Utah 1891).

genuine disputes of material fact because the facts that USAC and VR Acquisitions disputed are immaterial, and the district court did not rely on them when granting summary judgment. So VR Acquisitions asks us to affirm the district court's summary judgment ruling.

¶48 The State agrees with VR Acquisitions' position, concluding that "There can be no genuine issue of material fact when a claim has no basis in law because the law determines what facts are material." In other words, the State contends that because USAC did not establish any legal basis for a *Conatser* easement, the district court correctly granted summary judgment in favor of VR Acquisitions and the State. The State also echoes VR Acquisitions' argument that because the district court accepted USAC's facts as true and did not rely on any disputed material facts when answering the threshold question, USAC's claims necessarily fail. Further, the State contends that the comprehensive table of objections to USAC's material facts that the State submitted did not create a dispute of material fact, because the objections outlined in the table questioned the facts' relevance, not their underlying veracity.

¶49 We are persuaded by VR Acquisitions' and the State's reasoning and, as discussed below, conclude that (1) the threshold question is a mixed question of fact and law that requires the application of a legal standard; (2) the record before us shows there is no genuine dispute of material fact; and (3) the district court did not make any conclusions contrary to USAC's undisputed facts.

*A. The Threshold Question Is a Mixed Question of Fact and Law*

¶50 Though we articulated the threshold question in various ways the first time this case came up on appeal,[46] the gist of the question was whether there was a factual *and* a legal basis in Utah during the late 19th century for establishing a *Conatser* easement.[47] In other words, when we remanded the case, we asked the district court to determine whether historical *facts* supported the *legal*

---

[46] *See Utah Stream Access Coal. v. VR Acquisitions, LLC* (*USAC I*), 2019 UT 7, ¶¶ 4–6, 29, 60, 85, 88, 89, 91, 439 P.3d 593.

[47] *See generally id.*

creation of a public easement.[48] So the threshold question was a mixed question of fact and law. All parties acknowledge this in their respective briefs on appeal, but they disagree over what that means with respect to USAC's burden in opposing the motions for summary judgment.

¶51 "Mixed questions arise when a district court must apply a particular rule of law to a particular set of facts."[49] In other words, "[t]hey involve application of a legal standard to a set of facts unique to a particular case."[50] So a mixed question of fact and law necessarily requires an answer supported by both the facts of the case and applicable laws. And because the question of whether "an easement exists is a [question] of law,"[51] it necessarily follows that USAC cannot meet its burden of showing that early Utahns recognized a *Conatser* easement without pointing to a relevant legal standard that existed in the late 19th century.

### B. There Are No Genuine Disputes of Material Fact

¶52 The district court stated that it accepted USAC's historical facts as true and viewed them in the light most favorable to USAC. And finding no genuine dispute of material fact, the court granted VR Acquisitions' and the State's motions for summary judgment, holding that

> [USAC] has come forward with substantial evidence that in the last half of the 19th century, Utahns widely and freely touched and used both public and private beds of Utah's lakes, rivers, and streams for various purposes, including recreation. But, [USAC] has failed to prove that this historical use gave rise to a public easement dictated by our law in the late 19th century.

---

[48] *See id.* ¶ 89 (posing the threshold question as whether the historical facts established by USAC gave rise to "a public easement dictated by our law in the late 19th century"); *see also id.* ¶¶ 6, 60, 88, 91.

[49] *Randolph v. State,* 2022 UT 34, ¶ 20, 515 P.3d 444.

[50] *In re United Effort Plan Tr.,* 2013 UT 5, ¶ 19, 296 P.3d 742 (cleaned up).

[51] *Valcarce v. Fitzgerald,* 961 P.2d 305, 311 (Utah 1998).

¶53 On appeal, USAC insists that the testimony of its expert witnesses created numerous disputes of material fact, any of which should have precluded the district court's grant of summary judgment. As outlined above,[52] USAC summarized the findings and opinions of its witnesses into twelve "disputed issues of material fact" and argued that these issues were "sufficient to create a genuine dispute of material fact relating to whether a *Conatser*-type easement 'would have been accepted under the law of the late 19th century.'"[53] Additionally, USAC claims that it disputed one of VR Acquisitions' material facts and that the State disputed some of USAC's material facts. Below, we address each of USAC's claimed disputes of material fact in turn and affirm the district court's conclusion that there were no genuine disputes of material fact.

1. USAC's "Disputed Material Facts" Are Immaterial and Do Not Preclude Summary Judgment

¶54 As explained above, because the threshold question is a mixed question of fact and law, to survive summary judgment, USAC must present material facts supporting the legal creation of a *Conatser* easement at the time Utahns adopted the constitution. Any "disputed" facts that do not support the existence of a *Conatser* easement are immaterial and will not preclude summary judgment. The twelve "disputed facts" provided by USAC support the conclusion that Utahns freely accessed privately owned streambeds in Utah in the late 19th century, but those "disputed facts" do not point to any legal right to do so. In other words, although USAC was required to point to both historical facts *and* relevant laws to support its position that a *Conatser* easement would have been recognized in Utah in the late 19th century, it has pointed only to historical facts suggesting that Utahns accessed both public and private land without legal repercussions. So, as explained in detail below, none of the facts presented by USAC, even accepted as true, are sufficient to create a genuine dispute of material fact because they do not establish that early Utah law recognized a *Conatser* easement.

¶55 First, USAC argued before the district court that early Utahns believed they had the right to use privately owned streambeds and accessed those streams without landowners' permission. The court

---

[52] *See supra* ¶ 29.

[53] (Quoting *USAC I*, 2019 UT 7, ¶ 91.)

held that these facts did not create a dispute of material fact, because they did not provide any legal basis for the creation of an easement. We agree. In this context, belief alone has never been a recognized legal standard,[54] legal standard,[55] and trespassing on privately owned property—without more—is insufficient to create a public right-of-way.[56]

¶56 Second, USAC argued that, without federal approval, Utah's territorial legislature granted county courts and officials jurisdiction over the management of water, as well as the distribution, occupation, and sale of land. The district court was correct in finding that this creates no dispute of material fact. Even accepted as true, this assertion does not suggest that easements on privately owned property were created as a result of the territorial legislature's actions. Further, in support of its assertion, USAC argued that the

---

[54] *See State v. Stewart*, 2019 UT 39, ¶ 37, 449 P.3d 59 ("[I]gnorance of the law is no excuse." (cleaned up)); *Hall v. Peterson*, 2017 UT App 226, ¶ 56 n.17, 409 P.3d 133 ("Smith and others may have *believed* that they had a right to drive all the way to their respective lots, but that has *nothing to do* with permission granted by Peterson, nor Peterson's ability to foresee reliance on that privately held belief." (Emphasis added)); *cf. Adkins v. Uncle Bart's, Inc.*, 2000 UT 14, ¶ 40, 1 P.3d 528 ("[O]rdinarily, courts are bound by stipulations between parties. However, such is not the case when points of law requiring judicial determination are involved." (cleaned up)).

[55] *See State v. Stewart*, 2019 UT 39, ¶ 37, 449 P.3d 59 ("[I]gnorance of the law is no excuse." (cleaned up)); *Hall v. Peterson*, 2017 UT App 226, ¶ 56 n.17, 409 P.3d 133 ("Smith and others may have *believed* that they had a right to drive all the way to their respective lots, but that has *nothing to do* with permission granted by Peterson, nor Peterson's ability to foresee reliance on that privately held belief." (emphasis added)); *cf. Adkins v. Uncle Bart's, Inc.*, 2000 UT 14, ¶ 40, 1 P.3d 528 ("[O]rdinarily, courts are bound by stipulations between parties. However, such is not the case when points of law requiring judicial determination are involved." (cleaned up)).

[56] *See, e.g., Kiernan Fam. Draper, LLC v. Hidden Valley Health Ctrs., LC*, 2021 UT 54, ¶ 41, 497 P.3d 330 ("To obtain a prescriptive easement, a party must establish a property use that is (1) open, (2) notorious, (3) adverse, and (4) continuous for at least 20 years." (cleaned up)).

"theological, cultural, political, social and legal perspectives" influenced how people allocated water resources in Utah during the late 19th century, suggesting that early Utahns' customs and practices support the existence of an easement. But historical theological, cultural, political, social, and even legal perspectives are not legal standards, and easements are created as a matter of law, not custom or practice.[57] So there is no genuine dispute of material fact in that regard.

¶57 Third, USAC argued that after 1869, those holding title to land under Utah territorial law secured federal patents (and legal title) to those lands. On this point, the district court determined there was no dispute of material fact because the federal patents did not recognize or create any affirmative right to a public easement. Again, we agree. Nothing in the record before us indicates that the federal patents transferred *land* subject to a *Conatser* easement. USAC contends that because federal laws were passed protecting the right to use public *waters* before the federal patents were granted, federal law recognized a *Conatser* easement on the *lands* touching those protected waters. But water and the land over which that water

---

[57] *See infra* II.B; *see also* JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 6:2 (updated March 2023) ("The doctrine [of easement by custom] has long been generally regarded as inapplicable in the United States." (cleaned up)); *Graham v. Walker*, 78 Conn. 130, 61 A. 98, 99 (Conn. 1905) ("This court has never affirmed the recognition by our law of personal rights of way or other easements resting on local custom."); *Bell v. Town of Wells*, 557 A.2d 168, 179 (Me. 1989) ("Very few American states recognize the English doctrine of public easements by local custom."); *Ackerman v. Shelp*, 8 N.J.L. 125, 130 (N.J. 1825) (stating that the doctrine of easement by custom would produce "doubtful if not dangerous consequences"); *Harris v. Carson*, 34 Va. 632, 638–39 (1836) ("Any practice or usage, however general, introduced into this country since its settlement, and in opposition to the common law, can have no force on the ground of custom."); *cf. Hirtz v. Tex*as, 773 F. Supp. 6, 8–9 (S.D. Tex. 1991), *vacated on other grounds,* 974 F.2d 663 (5th Cir. 1992) ("Although the dry beach is frequently privately owned, it is burdened with an easement in the public for access and enjoyment. This easement was acquired through *common law doctrines*." (emphasis added)).

flows are quite different. And USAC has not pointed to any authority stating that the land under or adjacent to public waters is subject to the same protections as the waters themselves. There is no indication that the federal government transferred land encumbered by any easements, and USAC points to no legal authority that states otherwise. So this assertion does not create a genuine dispute of material fact.

¶58 Fourth, USAC argued that (1) early Utahns' use of streambeds on private lands was free, ubiquitous, and permitted by state trespass laws; (2) contemporary trespass laws required property damage for a civil trespass to occur; (3) contemporary trespass laws did not prohibit the use of riverbeds; and (4) anglers were not considered trespassers when fishing in rivers or wading through streams on private lands during the 19th and 20th centuries. The district court was correct in holding that none of these assertions created a dispute of material fact. USAC argues that these facts are "consistent with the existence of an easement." But trespass laws, regardless of their scope, enforcement (or lack thereof), and longevity do not create an affirmative right to a public easement.[58] In other words, the trespass laws USAC cites do not recognize a legal right to a public right-of-way.[59] So these claims do not create a genuine dispute of material fact.

¶59 Fifth, USAC argued that beginning in the 1880s, Utah taxpayers funded the stocking of fish in rivers running through privately owned property and that state officials defended the public's right to wade in those rivers. The district court determined that these facts did not create a genuine dispute of material fact. We again agree. These assertions are, at best, tangential to the issue of easement creation. There is nothing in the record before us or in the arguments advanced by USAC suggesting that fish stocking contributed to the creation of a *Conatser* easement. And, regardless of what purported right state officials defended, USAC does not cite any legal authority supporting that right in the context of an

---

[58] *See Kiernan Fam. Draper, LLC*, 2021 UT 54, ¶ 41 ("To obtain a prescriptive easement, a party must establish a property use that is (1) open, (2) notorious, (3) adverse, and (4) continuous for at least 20 years." (cleaned up)).

[59] *See infra* II.C.

easement. So these claims also do not amount to a genuine dispute of material fact.

### 2. The Facts that USAC Disputes Are Immaterial to the Threshold Question

¶60 USAC contends that summary judgment was unjustified because USAC disputed VR Acquisitions' factual contention that "the ability to walk down a streambed underlying non-navigable waters was subject to debate around the time of statehood and has been the subject of litigation since." But the district court did not rely on this factual assertion when granting summary judgment. Instead, it examined the facts provided by USAC and concluded that USAC had not pointed to any legal authority showing that a *Conatser* easement was recognized in Utah in the late 19th century. So this dispute of fact is immaterial and does not preclude summary judgment.[60]

¶61 USAC also argues it disputed VR Acquisitions' evidence relating to the Rogers Report by claiming that it contained impermissible legal conclusions as opposed to factual support for VR Acquisitions' arguments. But again, the district court did not rely on the Rogers Report in issuing its order—it relied on the facts provided by USAC. So USAC's "dispute" with the Rogers Report does not preclude summary judgment.

### 3. The State's Objections to USAC's Experts' Declarations Did Not Preclude Summary Judgment

¶62 USAC contends that the State disputed USAC's material facts when it objected to (1) USAC's use of its experts' declarations as relating to the Rogers Report; (2) USAC's use of its experts' declarations insofar as they omitted citations to the initial expert reports; and (3) portions of USAC's experts' declarations because—according to the State—they were irrelevant, violated the best evidence rule, and made unsupported legal conclusions. But, as discussed above, the court accepted USAC's facts as true and did not rely on the Rogers Report when granting summary judgment. Accordingly, the State's dispute does not preclude summary judgment.

---

[60] *See In re Guardianship of A.T.I.G.*, 2012 UT 88, ¶ 35, 293 P.3d 276.

*C. The District Court Did Not Make Conclusions Contrary to USAC's Undisputed Facts*

¶63 USAC further argues that despite the district court's purported acceptance of USAC's historical facts, it adopted evidence inconsistent with those facts. First, USAC contends that the district court adopted VR Acquisitions' use of the Johnson Article. Second, USAC asserts it repudiated the State's assertions that a *Conatser* easement (1) could have existed only if it was recognized by the federal government when it granted land to Utahns via patent and (2) could not have existed under *Harkness*. And third, USAC contends that the district court improperly concluded that the law of the late 19th century was confined to federal and territorial caselaw.

1. The District Court's Use of the Johnson Article Was Immaterial to Its Grant of Summary Judgment

¶64 While it is true that the district court cited the Johnson Article in its order granting summary judgment, it did not rely on that article in its order. Once again, the crux of the court's reasoning was that there was no genuine dispute of material fact that would preclude summary judgment, because USAC had not identified any legal authority supporting its claim that a *Conatser* easement was recognized by Utah law in the late 19th century. The record shows that any citation the court made to the Johnson Article was irrelevant to its dispositive reasoning and conclusion. So the district court's use of the Johnson Article was immaterial for summary judgment purposes.

2. The District Court's Conclusion, Based on *Harkness v. Woodmansee*, that a *Conatser* Easement Could Not Have Existed at the Time of the Utah Constitution's Ratification Was Not Erroneous

¶65 USAC contends that the district court looked to the 1891 *Harkness* case for support but ignored USAC's facts supporting early Utahns' use of easements before that case was decided—specifically between 1869 and 1891. USAC argues that these facts support the assertion that federal patents could have created private land encumbered by a *Conatser* easement and that such an easement did not have to be specifically recognized in the federal patents granting Utahns title to their lands. But USAC's Achilles' heel remains—the facts that USAC presented relating to the period between 1869 and 1891 are unaccompanied by any legal authority or standard supporting USAC's claims that a *Conatser* easement was established in this time period. On the other hand, the *Harkness* case sets forth an applicable legal standard that existed around the time of statehood

and substantiates VR Acquisitions' and the State's arguments. So the district court did not err by using it as justification for its summary judgment decision.

3. The District Court Did Not Err in Its Analysis of Applicable Law

¶66 USAC argues that "by claiming to accept [USAC's] facts, but then deciding as a legal question the 'relevant legal standards existing in the late 19th century,' the district court set up an unachievable standard that ignored [USAC's] material facts relating to the relevant legal standards existing at statehood." In other words, USAC argues that Utah's 19th-century law is not confined by federal and territorial caselaw but that additional territorial law—"laws adopted communally"—existed outside this context. But in the same section, USAC admits that "there was no statutory law, and very little, if any, common law in existence to define the scope of the *Conatser*-type easement that early Utahns used by right." As we explain above and below, custom and practice are insufficient legal standards for establishing an easement.[61] And simply because USAC cannot meet the standard required by a mixed question of fact and law does not mean that the district court erred in the framing of its question; instead, it means that USAC's arguments fall short of meeting the burden it bears. The court asked USAC to find legal authority to support its claims, and USAC did not do so. The district court did not err in its analysis.

¶67 In sum, answering the threshold question required that USAC present both historical facts and legal authority to support its claims, but USAC did not establish that a relevant legal standard existed in the late 19th century that would have established that the public's use of privately owned streambeds was pursuant to an easement rather than the acquiescence of property owners. Therefore, USAC's "disputed" facts did not create a genuine dispute of material fact, the factual objections made by the parties were immaterial to the threshold question, and the district court did not make any conclusions contrary to the facts presented by USAC.

---

[61] *See infra* II.B.

## II. USAC Has Not Demonstrated a 19th-Century Legal Basis for a *Conatser* Easement

¶68 USAC offers four legal bases on which it claims a *Conatser* easement could have been established at the time Utah obtained statehood. First, it claims that a trilogy of modern cases demonstrates that a *Conatser* easement predates Utah statehood. Second, it posits that the customs and practices of early Utahns demonstrated that contemporary law would have recognized a *Conatser* easement. Third, it maintains that the lack of trespass statutes around the time Utah obtained statehood is consonant with the existence of a *Conatser* easement. And finally, it claims that 19th-century federal law supports recognition of a *Conatser* easement. We discuss each argument in turn.

### A. The Threshold Question Is Not Resolved by Reference to Modern Caselaw

¶69 USAC first attempts to justify a 19th-century *Conatser* easement with caselaw that postdates the ratification of the Utah Constitution. It asserts that the answer to the threshold question "lies within the intersection" of three cases: *Adams v. Portage Irrigation, Reservoir & Power Co.;*[62] *J.J.N.P. Co. v. State;*[63] and *Conatser v. Johnson.*[64] According to USAC, these cases, as well as the interplay between articles XVII and XX of the Utah Constitution, establish a 19th-century basis for a *Conatser* easement.

¶70 USAC presents what it characterizes as a "natural trajectory in identifying the public's right to use waters, . . . which right necessarily included the right to recreate on those waters, including the right to touch the streambeds." According to USAC, this "natural trajectory" began with our holding in *Adams* that "[w]hile [water] is flowing naturally in the channel of the stream or other source of supply, it must of necessity continue common by the law of nature, and therefore is nobody's property, or property common to everybody."[65] USAC asserts that because the *Adams* court did not cite any statute in arriving at this holding, the public's ownership of

---

[62] 72 P.2d 648 (Utah 1937).

[63] 655 P.2d 1133 (Utah 1982).

[64] 2008 UT 48, 194 P.3d 897.

[65] *Adams*, 72 P.2d at 653.

the water and its right to use that water "were existing territorial rights that were confirmed by Article XVII."

¶71 *Conatser* is also a crucial part of the caselaw trajectory outlined by USAC. USAC asserts that *Conatser* relied on *Adams* when recognizing the right to use privately owned streambeds.[66] And while USAC concedes that *Conatser* did not address whether this right existed at statehood, in its view, *J.J.N.P.* represents the connecting link between *Adams* and *Conatser* because *J.J.N.P.* relied on *Adams*, and *Conatser*, in turn, relied on *J.J.N.P.*

¶72 So USAC attempts to connect the dots among *Adams*, *J.J.N.P.*, and *Conatser* in three steps, reasoning that (1) "*Adams* affirmed that the public had a right to use public water, which existed at statehood"; (2) "*J.J.N.P.* held the public had a right to float on public water even on private land"; and (3) "*Conatser* relied on both [*Adams* and *J.J.N.P.*] and held that the public had a right to touch the streambeds of private land." USAC goes on to tie the relationship among these three cases to the relationship between articles XVII and XX of the Utah Constitution, explaining that article XVII establishes that the public has owned the water since before Utah obtained statehood, and article XX restricts the State's ability to take away the public's right to the use of streambeds.

¶73 USAC's reasoning is constrained by our holding in *USAC I*. In remanding this case, we offered USAC the chance "to establish a historical, 19th-century basis" for the *Conatser* easement.[67] In doing so, we specified that this "determination cannot be made by mere reference to our analysis in *J.J.N.P.* and *Conatser*" because "[i]n those cases we were not asked to analyze the historical scope of a public easement in use of public waters at the time of the framing of the Utah Constitution."[68] We also clarified the sources of the principles

---

[66] *Conatser* references *Adams* once in a footnote for the proposition that "waters in Utah are of two classes, private and public, and title to public waters 'is in the public; all are equal owners; that is, have coequal rights therein.'" *Conatser*, 2008 UT 48, ¶ 8 n.2 (quoting *Adams*, 72 P.2d at 652).

[67] *Utah Stream Access Coal. v. VR Acquisitions, LLC* (*USAC I*), 2019 UT 7, ¶ 60, 439 P.3d 593.

[68] *Id.* ¶ 86.

underlying *Conatser*, *J.J.N.P.*, and *Adams*, stating that the conclusions in *Conatser* "were rooted in common-law trust principles that we imported from modern case law and a chapter from *American Jurisprudence*"[69] and that "[t]he same goes for the decisions we relied on in *Conatser*—*J.J.N.P.* and *Adams*."[70] We noted that "our analysis in *Conatser* was not constitutionally based"—"[i]t was rooted in common-law easement principles"[71]—and that, similarly, the holdings in *J.J.N.P.* and *Adams* resulted from the application of "common-law principles."[72]

¶74 The district court accurately stated that "[t]he issue presented on remand asks the Court to view USAC's claim through the lenses of the law as it existed in 1896, not the lenses of the common law as it developed some one hundred years later." Likewise, the district court correctly concluded that the rights identified in *Conatser* and *J.J.N.P.* were "the 'product of common-law developments in the 20th and 21st centuries.'"[73] For this reason, we disagree with USAC's position that the natural trajectory it seeks to identify in *Adams*, *J.J.N.P.*, and *Conatser* was evident at the time Utah obtained statehood, and we reiterate that the answer to the threshold question cannot rely on modern caselaw.

*B. USAC Has Not Shown that Utahns' Historical Use of Streambeds Gave Rise to a Public Right-of-Way*

¶75 VR Acquisitions and the State set forth a straightforward framework, based on *Harkness v. Woodmansee*,[74] explicating the understanding of public easements in the late 19th century. In that 1891 case, the Supreme Court of the Territory of Utah explained that "the public may acquire a right of way over private property" in "either of three ways": "(1) [b]y condemnation in pursuance of the

---

[69] *Id.* ¶ 87.

[70] *Id.* ¶ 87 n.6.

[71] *Id.* ¶ 60.

[72] *Id.* ¶ 87 n.6.

[73] (Quoting *id.* ¶ 91.)

[74] 26 P. 291 (Utah 1891).

law of eminent domain; (2) by dedication; [or] (3) by such continued use as gives a prescriptive right."[75]

¶76 Based on this framework, VR Acquisitions and the State conclude that the caselaw at the time of the Utah Constitution's ratification clearly specified that a public right-of-way could be created only by dedication, prescription, or condemnation—and so because USAC does not argue that a *Conatser* easement arose in any of those three ways, it offers no legal basis on which a 19th-century court would have recognized such an easement.

¶77 USAC counters that *Harkness* does not provide an answer to the threshold question. In its view, the holding in *Harkness* should not be applied outside the circumstances of the case—a private property dispute between private parties. As USAC sees it, because *Harkness* did not involve the exact issue presented by the threshold question—whether the public has the legal right to touch privately owned streambeds—the case's holding cannot be understood to preclude a *Conatser* easement.

¶78 USAC elaborates that the *Harkness* court did not establish an exhaustive list of ways the public can acquire a right-of-way. In support of this argument, it provides examples of recent cases in which public rights-of-way have been recognized by methods other than dedication, prescription, or condemnation. Specifically, it contends that "the claim that *Harkness* set forth an exhaustive list for the existence of an easement runs contrary to the rights and easement recognized . . . in *J.J.N.P.* and *Conatser*." So, according to USAC, because the court in *J.J.N.P.* and *Conatser* recognized easements created by methods other than dedication, prescription, or condemnation, the easements in those cases must be distinct from the type described in *Harkness*.

¶79 We do not reach the competing arguments related to the *Harkness* framework, because we conclude that even if the case's framework is inapplicable, USAC must provide an alternative 19th-century legal framework affirmatively establishing a *Conatser* easement at the time Utah obtained statehood, which it has not done.

¶80 The closest USAC comes to demonstrating an affirmative legal basis for a 19th-century *Conatser* easement is its argument that

---

[75] *Id.* at 292.

the legal framework was established through the customs and practices of early Utahns. Although USAC presents facts illustrating the customs and practices of the time, it does not convince us that these customs and practices were tied to a contemporary legal framework. In fact, USAC reinforces our conclusion by emphasizing what it describes as a "subtle, but significant" distinction between *evidence* of a *Conatser* easement and the *source* of the easement. It delineates this distinction by explaining that early Utahns' customs and practices constitute "historical evidence" of the *Conatser* easement; so while customs and practices are not the *source* of the easement, they are *evidence* of its existence. While we do not dispute the distinction USAC seeks to draw, we conclude that it ultimately hurts USAC's argument rather than supports it because the threshold question requires that USAC establish a legal basis—or a "source"—of a 19th-century *Conatser* easement, not mere "evidence" that such an easement existed.

¶81 In its motion for summary judgment, VR Acquisitions responded to USAC's facts and claims regarding custom and practice by discussing the doctrine of easement by custom. It offered caselaw suggesting that this doctrine was (1) "disfavored by courts across the country" in the late 19th century and (2) "not a basis on which a public easement could be established in Utah in 1895." In support of its contention that easement by custom never took root, it cited early caselaw from other states demonstrating that the doctrine was "largely a dead doctrine in the United States."[76] And in support of its claim that easement by custom was not recognized in Utah at the time of statehood, it cited *Harkness*. In outlining the ways in which a public right-of-way can arise, the *Harkness* court referenced the doctrine of easement by custom but noted that the doctrine creates "absurdities" in its application.[77]

¶82 Responding to USAC's facts and claims regarding custom and practice, the district court stated that, in essence, USAC argued that Utahns' legal right to touch privately owned streambeds stemmed from customs and practices of the time. The court concluded, based on VR Acquisitions' analysis of the easement-by-

---

[76] (Quoting *Almeder v. Town of Kennebunkport*, 2014 ME 139, ¶ 35, 106 A.3d 1099, *as corrected* (Apr. 16, 2015).)

[77] *Harkness*, 26 P. at 292.

custom caselaw it cited, that, at the time Utah obtained statehood, a public easement could not be established by custom.

¶83 On appeal, USAC suggests that early Utah caselaw recognized the "communal understanding doctrine." For support, it offers territorial caselaw that states, "But one course was open, and that was for the whole body of the people to agree, expressly or tacitly, upon a common measure."[78] Based on this excerpt, USAC presumes that "early Utahns lived by laws adopted communally—including a *Conatser*-type easement on public waters"—and that communally-adopted laws "are laws as certainly as if expressly adopted by the lawmaking power."[79] But USAC does not develop this argument further. It only briefly refers to the idea that "Utah settlers brought with them and implemented communal principles of sharing resources"[80] and does little more than suggest that early Utahns believed in working together for the greater good. USAC does not explain how this purported "communal understanding doctrine" was applied in practice, and, specifically, it does not explain how a *Conatser* easement arose under the doctrine. Because USAC does not develop its argument under this doctrine, which is the closest it comes to setting forth an affirmative legal basis on which a *Conatser* easement could have been recognized in the 19th century, we do not reach the merits of the parties' arguments on this issue. We are therefore left to conclude that USAC has not carried its burden of establishing a legal basis for a *Conatser* easement rooted in the customs and practices of those living in Utah in the 19th century. In other words, even if the *Harkness* framework were inapplicable, USAC has not articulated an alternative legal basis on which a 19th-century *Conatser* easement could have been based. And absent such an articulation, USAC has not shown that a *Conatser* easement would have been recognized by early Utahns.[81]

---

[78] *First Nat'l Bank of Utah v. Kinner*, 1 Utah 100, 107 (1873).

[79] (Quoting *id.*)

[80] (Cleaned up.)

[81] VR Acquisitions and the State also responded to USAC's customs and practices argument by asserting that "[a]s a matter of law, [USAC] cannot prevail in this case by rooting its claimed easement in early Mormon religious principles," because "'nonsectarianism' is one of the 'foundational themes' that

(continued . . .)

### C. The Historical Absence of a Statutory Prohibition of Trespass Did Not Confer a Right-of-Way on the Public

¶84 Next, USAC seeks a 19th-century basis for a *Conatser* easement in territorial trespass statutes—or rather, in the absence of such statutes. According to the facts established by USAC and accepted as true by the district court, "[t]erritorial statutes did not prohibit Utahns from walking across private land for any purpose (e.g.[,] to access a stream), nor could private landowners prohibit such access"; and early state trespass laws "allow[ed] the free use of streams flowing through private land."

¶85 In particular, USAC offered territorial trespass statutes passed in 1852, 1866, 1876, and 1888 as evidence that early Utah trespass statutes required physical damage, theft, or conversion of property for a civil trespass to occur. And a declaration from one of USAC's experts states that in 1915, the state legislature clarified a 1909 statute that prohibited the fishing of any stream from horseback or at night, explaining that nothing in that section prohibited a person from wading in a stream while fishing. USAC also provided a statement from the Utah Attorney General's biennial report for 1901 to 1902 in which the Attorney General could not definitively say whether a person trespasses while passing up and down a stream on private property.

¶86 VR Acquisitions counters USAC's argument by asserting that the dearth of laws prohibiting trespass does not equate to an enforceable legal right.[82] The State similarly argues that the district court's summary judgment decision cannot be overturned based on the mere fact that early Utah trespass laws were consistent with the

---

'underlie[s] the religion and conscience provisions'" of the Utah Constitution. (Quoting *Soc'y of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 939 (Utah 1993).) Like the district court, we do not reach this constitutional argument because we resolve USAC's claims on other grounds. *See State v. Wood*, 648 P.2d 71, 82 (Utah 1982) ("It is a fundamental rule that [courts] should avoid addressing a constitutional issue unless required to do so.").

[82] USAC concedes that "the fact that a trespass law did not prohibit use of the waterbed does not prove the existence of an easement," but it maintains that "the lack of trespass laws relating to such use is consistent with the existence of an easement."

existence of a *Conatser* easement. In addition, the State, along with amicus Utah Alliance to Protect Property Rights (UAPPR), directs us to late-19th-century caselaw refuting USAC's claim that private landowners could not prohibit others from crossing over their land. This caselaw, from both before and after statehood, demonstrates that the crossing of private land was presumptively permissive, rather than an affirmative right, and it supports VR Acquisitions' and the State's argument that although early trespass laws did not expressly prohibit Utahns from crossing private land, they also did not expressly allow for such crossing.

¶87 In *Harkness*, for example, when an individual claimed a prescriptive right-of-way across his neighbor's property, the Supreme Court of the Territory of Utah explained that "[w]here a person opens a way for the use of his own premises, and another person uses it also without causing damage, the presumption is . . . [that] such use by the latter was permissive, and not under a claim of right."[83] Similarly, in *Lund v. Wilcox*, a property owner sought to enjoin her neighbor "from tearing down her fences and from trespassing on and passing over a certain portion of her land."[84] For years, while improving his land, the neighbor had crossed over a portion of uncultivated land on the neighboring property in order to reach the public highway.[85] The 1908 Supreme Court of Utah held that the neighbor had not "established a legal right to the right of way" over the property and that the right-of-way was also not supported on "equitable grounds."[86] The court stated that it "kn[e]w of no law" granting the "right to pass over another's property at will to reach his own" without compensation,[87] and so it rejected the neighbor's claimed right-of-way.

¶88 USAC has not shown that the absence of trespass statutes in Utah law around the time Utah obtained statehood gave rise to a *Conatser* easement. We agree with the district court's conclusion that just because the public was not statutorily prohibited from touching

---

[83] *Harkness*, 26 P. at 293.

[84] 97 P. 33, 34 (Utah 1908).

[85] *Id.*

[86] *Id.* at 36.

[87] *Id.* at 35.

privately owned streambeds, that does not mean it had an enforceable legal right to do so. And, moreover, we agree with the State and amicus UAPPR that the absence of early trespass laws did not negate the common law right to exclude.

### D. The Federal Law USAC References Does Not Establish a 19th-Century Conatser *Easement*

¶89 USAC next references 19th-century federal law as a basis for a *Conatser* easement. VR Acquisitions and the State argued to the district court that a *Conatser* easement could not have arisen under 19th-century federal law because (1) while Utah was a territory, "the United States was the sole sovereign authority within its borders"; and (2) private parties that acquired land from the United States government at the time obtained "'perfect and consummate title'" to the land.[88] USAC responded by claiming that the 19th-century *Conatser* easement was "entirely a creature of Utah law" and that the easement "is not now and has never been rooted in federal law."

¶90 In its summary judgment order, the district court concluded that during the period from 1847 to 1869, the United States government owned all the land in the Utah territory and that from 1847 to 1869, the United States transferred title to some of the land in the territory to private parties. It determined that during the former period, Congress had "plenary power" over the lands comprising the Utah territory. And, citing three cases—*Shiver v. United States*,[89] *Wilcox v. Jackson ex dem. McConnel*,[90] and *Hawke v. Deffenbach*[91]—the court determined that during the latter period, private parties in the Utah territory acquired perfect and consummate title to purchased land, free of any encumbrance of adverse claim.

¶91 On appeal, USAC reiterates that "federal law does not provide an answer to the threshold question." Yet it also asserts that 19th-century federal law suggests the existence of a *Conatser* easement because (1) contemporary legal authority did not support the proposition that federal land patents issued free of

---

[88] (Quoting *Shiver v. United States*, 159 U.S. 491, 495 (1895).)

[89] 159 U.S. 491 (1895).

[90] 38 U.S. 498 (1839).

[91] 22 N.W. 480 (Dakota 1885).

encumbrances; and (2) under contemporary federal law, water rights were carved out from land patents.

¶92 USAC protests the district court's reliance on *Shiver*, *Wilcox*, and *Hawke* because "none of the cases . . . stand for the proposition that a patent passes title to the land as well as title to the water." It attempts to distinguish these cases, suggesting that they "have absolutely nothing to do with rivers, streams, and water, nor a corollary easement" and that "none of the . . . cases dealt with the patents passing title to land *that also attempted to pass title to water*."

¶93 In addition, USAC avers that federal law supports recognition of a 19th-century *Conatser* easement because Congress enacted laws to protect the right to use and access public waters. It references two federal laws—the Desert Land Act and the Mining Act of 1866—that, in its view, "reserve public rights for entrance upon water." Concerning the Desert Land Act, USAC cites a New Mexico Supreme Court case in which the court concluded that, upon passage of the Desert Land Act,

> the government possessed the power to dispose of land and water thereon together, or to dispose of them separately. . . . That Congress intended to establish the rule that for the future (after March 3rd, 1877) the land should be patented separately; and that all nonnavigable waters thereon should be reserved for the use of the public under the laws of the states and territories named.[92]

¶94 Next, concerning the Mining Act of 1866, USAC points out that the act "included an express protection and priority for the right to use water and acknowledged the role of local customs and laws in defining these vested rights notwithstanding the absence of a federally granted property interest." USAC quotes the following portion of the Mining Act of 1866 to support its position:

> [W]henever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or

---

[92] *State ex rel. State Game Comm'n v. Red River Valley Co.*, 51 N.M. 207, 466 (N.M. 1945) (opinion on second motion for rehearing) (cleaned up).

other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same.[93]

USAC also points out that four years after enacting the Mining Act of 1866, Congress amended it and confirmed that "all patents granted, or preemption or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights."[94] The essence of USAC's argument is that around the time Utah acquired statehood, federal law recognized that land patents were issued "subject to vested and accrued water rights."

¶95 VR Acquisitions and the State respond that USAC's federal law arguments are misplaced because they rely on "the appropriative use of water," and "the *Conatser* easement is not a 'water right'; it is a burden on the land and has no impact on use of the corpus of the water." We agree. At most, the sources USAC references establish that (1) after the enactment of the Desert Land Act, land was patented separately from water; (2) non-navigable waters are reserved for the public's use; and (3) under the Mining Act of 1866, federal land patents were subject to vested and accrued water rights. Even accepting these contentions as true, they have no bearing on the threshold question, because they define the scope of vested water rights for the appropriation of water; they do not validate USAC's claim that the two acts "reserve public rights for entrance upon water." So we conclude that the federal sources USAC references do not establish a 19th-century *Conatser* easement.

### III. USAC's Policy Arguments Have No Bearing on the Threshold Question

¶96 USAC presents three policy considerations that it states we should evaluate in reviewing the district court's resolution of the threshold question. First, it points to Utah's Constitution, which states, "The individual right of the people to hunt and to fish is a

---

[93] Act of July 26, 1866, ch. 262 § 9, 14 Stat. 251, 253, *codified at* 43 U.S.C. § 932, *repealed by* Federal Land Policy Management Act of 1976 (FLPMA), Pub. L. No. 94–579 § 706(a), 90 Stat. 2743.

[94] (Quoting Act of July 9, 1870, ch. 235, § 17, 16 Stat. 217, 218.)

valued part of the State's heritage and shall be forever preserved for the public good."[95] USAC implies that if a *Conatser* easement is not recognized, Utahns' constitutionally protected right to fish will be jeopardized. Second, USAC cites other western states' caselaw and statutes (specifically those of New Mexico, Montana, and Alaska) that recognize the public's right to wade in public waters on private land. USAC offers these examples as support for why we should answer the threshold question in its favor. And third, USAC warns of "significant economic impacts" if we affirm the district court's decision. USAC posits that if we close off public access to rivers and streams throughout Utah, fewer people will purchase fishing licenses, resulting in lower tax revenue for the state and fewer jobs for Utahns.

¶97 USAC's policy arguments do not convince us to resolve the threshold question in its favor. First, few, if any, rights are absolute—even those protected by the constitutions of Utah and the United States.[96] Further, without a legal basis for an easement, the public's right to fish cannot trump private individuals' right to exclude people from trespassing on their property—especially where Utah's Constitution says as much.[97] Second, though the laws of other states may prove persuasive at times, they have no binding effect on the threshold question here. And third, even if we were to accept as true the "likely negative economic impact" suggested by USAC, this alone would not alter our decision. It is well established that the judiciary may "not interfere with enactments of the Legislature where disagreement is founded only on policy considerations and the legislative scheme employs reasonable means to effectuate a legitimate objective."[98]

---

[95] UTAH CONST. art. I, § 30(1).

[96] *See Shields v. Toronto*, 395 P.2d 829, 835 (Utah 1964) (providing various examples to demonstrate that rights, including fundamental constitutional rights "cannot be regarded as isolated and absolute").

[97] *See* UTAH CONST. art. I, § 30 ("The individual right of the people to hunt and to fish is a valued part of the State's heritage and shall be forever preserved for the public good. . . . This section does not affect . . . the law relating to trespass or property rights . . . .").

[98] *Baker v. Matheson*, 607 P.2d 233, 237 (Utah 1979).

**Conclusion**

¶98 The threshold question is a mixed question of fact and law. As such, USAC was required to present to the district court both historical facts and relevant laws to support its argument that a *Conatser* easement was legally recognized in Utah in the late 19th century. But the facts that USAC presented were unaccompanied by any applicable legal authority supporting the creation or existence of a *Conatser* easement in Utah at the time of statehood. So the district court did not err when it found that there were no genuine disputes of material fact, and its conclusions were not contrary to the facts provided by USAC. Further, the arguments USAC makes in support of recognizing a *Conatser* easement do not establish any 19th-century basis for the existence of such an easement—the modern caselaw USAC cites is inapplicable, the customs and practices of early Utahns are immaterial, Utah's 19th-century trespass laws (or lack thereof) are insufficient, the referenced 19th-century federal laws are inadequate, and the policy considerations USAC advances are better directed to the legislature. We therefore affirm the district court's grant of summary judgment.

————————